712 So.2d 1011 (1998)
Kevin MELANCON and Alice Lenell Melancon, et al.
v.
SUNSHINE CONSTRUCTION, INC., et al.
No. 97 CA 1167.
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
*1013 John M. Castille, II, Jeffrey P. LeBlanc, Charles A. Schutte, Jr., Denham Springs, for Defendants/Appellants Sunshine Construction, Inc., and Tommy G. Poirrier.
Kenner O. Miller, Jr., Baton Rouge, for Appellees Shelter Mutual Insurance Co., and Judy Long.
David C. Forrester, Baton Rouge, for Appellees Mr. and Mrs. Gerald Coleman.
Darrell J. Loup, Baton Rouge, for Plaintiffs/Appellees Kevin George Melancon and Alice Lenell Levy Melancon.
Before CARTER and FITZSIMMONS, JJ., and CHIASSON,[1] J. Pro Tem.
CARTER, Judge.
This is an appeal by defendants who were the builder and seller of a house that had been vandalized prior to its sale. The judgment rendered by the trial court granted the buyers rescission of the sale and damages. The defendants appealed the judgment of the trial court on the basis that the buyer's sole remedy was the New Home Warranty Act, and the defendants disputed the awards made by the trial court. The buyers answered the appeal seeking an increase in attorney's fees.

FACTS
On October 31, 1994, vandals gained entry to a newly constructed home located at 8000 Darlene Street in Denham Springs. The vandals flooded the house by plugging the drains and turning on the faucets. When a neighbor noticed the activity, she called the police and Tommy Poirrier (Poirrier), the owner of Sunshine Construction Company, Inc. (Sunshine), who had built the house.
Poirrier testified he received the neighbor's call around 10:30 p.m. and arrived at the house about fifteen minutes later. According to Poirrier, the water had already been turned off at the main by Officer Randy Taylor, a deputy sheriff with the Livingston Parish Sheriff's Department, before he arrived. *1014 Poirrier testified he began to clean the water up by mopping and vacuuming the floors and ventilating the house. At trial, Poirrier claimed water was only on the floor in the kitchen, laundry room and master bedroom. However, according to Officer Randy Taylor's report, Poirrier claimed water had flooded the entire house, including the carpeted areas. Poirrier claimed when he went to the house the next day, there were no signs of any wetness on the floors.
In November of 1994, Kevin and Lenell Melancon were relocating from Berwick to the Baton Rouge area because Kevin Melancon had accepted a job in Baton Rouge. The Melancons told their real estate agent they preferred new construction or an older home with no carpet because Lenell Melancon suffered from severe allergies and did not want to live in a home that would present aggravating conditions. Although their real estate agent was informed of Lenell Melancon's allergies, the record does not establish whether Poirrier was aware of her allergies.
After viewing the house at 8000 Darlene Street, the Melancons made an offer to buy it for $120,500.00. The house was originally listed for a price of $127,900.00. At no time prior to the sale were the Melancons informed about the vandalism which took place in the house. The closing of the sale took place on November 23, 1994, and the Melancons moved into their new home the following week. The Property Condition Disclosure Statement, which was completed prior to the vandalism, did not contain any amendment to reflect the fact the house had been vandalized.
Soon after the Melancons moved into the house, they began to notice a musty odor. According to Kevin Melancon, he informed Poirrier of the smell, but Poirrier never indicated the house had previously had water on the floors. Approximately six months after the sale, the vinyl flooring in the kitchen began to show discoloration. A two foot wide strip of the flooring was replaced; but, it came from a different dye lot and did not match the original kitchen flooring. Moreover, the patch became discolored two to three months later. The Melancons also experienced warping and buckling of their wood flooring, mildew on their carpet, and further discoloration of the vinyl flooring in the kitchen and laundry room. According to Ms. Melancon, when Poirrier was first confronted with these problems, he suggested the problem was due to a possible broken crack in the slab. The previous vandalism was never mentioned.
Ten months after the sale, the Melancons learned of the vandalism through casual conversation with their neighbors. When they confronted Poirrier with this knowledge, he claimed the entire house had not flooded, only the bathrooms had gotten wet. At this point in time, Poirrier filed a claim with his builders' risk insurance company, which paid $6,200.00 to replace the flooring. Poirrier insisted the adjuster only found damages in the kitchen, master bedroom and living room.
Poirrier offered the Melancons two options to settle the matter. One option was that he would replace all the flooring in the house, and the second option was to pay the Melancons a cash settlement of $3,600.00.[2] When the Melancons found out the cash settlement was less than the amount Poirrier had received from his insurer and because they were still fearful of undiscovered water damage, they did not accept either of Poirrier's offers and consulted an attorney. They eventually filed suit against Poirrier and Sunshine for rescission of the sale and damages. Both Kevin and Lenell Melancon testified had they known of the vandalism, they would not have purchased the house.
Alford Chambers Pickett, an expert in building construction and trouble shooting construction problems, testified he inspected the house in January 1996. According to Pickett, the damage in the house was consistent with the vandal's actions and, in his opinion, water was allowed to soak into the flooring without being properly corrected. Based on Pickett's observations, the damage was caused by a complete inundation of all of the floors by water. Pickett testified the *1015 only way to be sure there was no further damages in the house was through destructive testing, such as removal of the sheetrock.
After a jury trial, the jury found in favor of the Melancons and against Sunshine and rescinded the sale of the house. The jury awarded the Melancons $15,646.98 for reimbursement for their reasonable expenses incurred in the purchase of the house, reimbursement of $1,901.00 as expenses in the preservation of the house, $22,000.00 in non-monetary losses, and all attorney's fees.[3] The jury also awarded Poirrier and Sunshine $1,876.15 as credit for the Melancons' use of the home. The defendants appealed the judgment of the trial court and the Melancons have answered the appeal, seeking an increase in attorney's fees.

LAW AND DISCUSSION

Applicability of the New Home Warranty Act
Defendants assert the trial court erred in allowing plaintiffs to assert remedies not provided in the New Home Warranty Act (NHWA). According to the defendants, the only remedy available to the plaintiffs is found in the NHWA. LSA-R.S. 9:3150 provides in pertinent part:
This Chapter provides the exclusive remedies, warranties, and prescriptive periods as between builder and owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply.
LSA-R.S. 9:3144 provides the warranties and exclusions under the NHWA. These warranties are specified in subsection (A) as follows:
(1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards.
(2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and equipment will be free from any defect due to noncompliance with the building standards.
(3) Ten years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with the building standards.
Defendants contend that the evidence indicates the NHWA is the exclusive remedy between the parties because Sunshine is a "builder" and plaintiffs are "owners" of the home in question.[4] The NHWA limits a buyer's remedies against a builder to actual damages, including attorney's fees and court costs associated with the violation. LSA-R.S. 9:3149. Rescission of the sale, one of the remedies sought by plaintiffs, is not available under the NHWA.
The defendant's status as a "builder" and the Melancons' status as the "owners" of the home does not conclusively establish that the NHWA is the only remedy available to resolve issues of defects in the house. See Leon v. Deters Custom Homes, Inc., 97-0772, p. 4 (La.App. 1st Cir. 4/8/98); 711 So.2d 346. A review of the record indicates that the problems with the flooring are the result of an act of vandalism which occurred after construction was completed. LSA-R.S. 9:3144(B)(8) specifically excludes from the builder's warranty loss or damage which does not constitute a defect in construction of the home by the builder, or any employee, agent, or subcontractor of the builder. It is apparent the problems the plaintiffs are experiencing with their home are completely unrelated to any action of the defendants in construction of the home; thus, the condition of the floors cannot be viewed as a defect in construction. Because there is no defect stemming from the construction, *1016 we find the trial court did not err in allowing the plaintiffs to assert remedies not provided in the NHWA. We find no merit in any of the appellants' assignments of errors regarding the applicability of the NHWA.

Jury Instructions
Adequate instructions are those instructions which fairly and reasonably point up the issues presented by the pleadings and evidence and which provide correct principles of law for the jury's application thereto. Haydel v. Hercules Transport, Inc., 94-1246, p. 17 (La.App. 1st Cir. 4/7/95); 654 So.2d 418, 429, writ denied, 95-1172 (La.6/23/95); 656 So.2d 1019. The judge has a duty to charge the jury as to the law applicable in a case and a correlative responsibility to require that the jury get only the correct law. It is the judge's responsibility to reduce the possibility of confusing the jury, and he may exercise the right to decide what law is applicable. Haydel v. Hercules Transport, Inc., 654 So.2d at 429. An appellate court must exercise great restraint before overturning a jury verdict on a suggestion that the jury instructions were so erroneous as to be prejudicial. Haydel v. Hercules Transport, Inc., 654 So.2d at 429.
In the instant case, defendants complain that the trial court improperly instructed the jury regarding redhibition and improperly included rescission as a remedy on the verdict form. The record reveals that the trial court instructed the jury, in part, as follows:
If you find that the Melancons would not have purchased the house at issue, had Sunshine Construction, Inc., or Tommy G. Poirrier, told them of the water intrusion of the home by the vandals, you must cancel the sales contract.
The trial court had previously instructed the jury on what was a redhibitory defect and the propriety of the remedies of reduction in price and rescission of the sale.
Defendants complain that being told that an act of vandalism occurred is not tantamount to finding that damages caused by the vandalism was sufficient to be considered a redhibitory defect. We disagree. The evidence presented at trial clearly established there was significant water damage in the house, with Poirrier admitting at trial that he was willing to replace the entire flooring in the house. We do not find this particular charge erroneous or confusing. Our review of the charges as a whole does not indicate the knowledge of the act of vandalism was the redhibitory defect, but the damage resulting from the act was the defect at issue.
After reviewing the jury instructions as a whole, we conclude the trial judge did not give any erroneous instructions, but rather gave instructions which fairly and reasonably pointed up the issues presented by the pleadings and evidence which provided correct principles of law for the jury's application thereto.

Verdict Form
Defendants assert that if Melancon had an alternative remedy based upon a vice of consent caused by error or fraud, then the trial court erred in failing to ask a single question on the verdict form required for the jury to make a decision on such a cause of action. Defendants contend the jury verdict form should have included questions regarding cause, existence of a defect in the home at the time of sale, whether Sunshine knew or should have know that plaintiffs would not have purchased the home if vandalism was disclosed, whether defendants knew or should have known of a defect, and a determination of whether there was a vice of consent due to fraud.
LSA-C.C.P. art. 1812 provides that the court must inform the parties of the special verdict form and instructions it intends to submit to the jury within a reasonable time prior to their argument to the jury. In Wisner v. Illinois Central Gulf Railroad, 537 So.2d 740, 751 (La.App. 1st Cir.1988), writ denied, 540 So.2d 342 (La.1989), we held that objections to jury interrogatories must be specific and allow the trial judge an opportunity to correct the error.
We note the defendants made several objections at trial was that the sole remedy available to plaintiffs was under the NHWA, and any reference to any other cause of action on the verdict form was contrary to *1017 law. This objection did not specify the errors defendants now complain of, but was more of a blanket objection.
The defendants' objection to the jury interrogatories is based on their contention that the sole remedy available to plaintiffs is found under the NHWA and any other reference to any other cause of action on the verdict form is contrary to law. This objection is insufficient to preserve their objections regarding specific questions on the verdict form. Given our previous determination that the trial court did not err in allowing rescission as a remedy in the instant case, we find defendant's issue regarding the propriety of instructions on redhibition and inclusion of rescission as a remedy on the verdict form to be without merit.

Damage Award for Mental Distress, Aggravation and Inconvenience
The jury awarded $22,000.00 for mental distress, inconvenience, and aggravation. Defendants appeal this award on the basis that such damages are not recoverable in an action by a homeowner for defects in a house.
LSA-C.C. art.1998 provides in part:
Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Thus, if the obligee can show that he intended to gratify a significant nonpecuniary interest by way of the contract, and the nature of the contract supports his contention, and that the obligor either knew or should have known that failure to perform would cause nonpecuniary loss to the obligee, the nonpecuniary damages may be recovered. Stonecipher v. Mitchell, 26,575, p. 3 (La.App. 2nd Cir. 5/10/95); 655 So.2d 1381, 1384. Whether the gratification of some nonpecuniary interest is the principal object of a contract is a question of fact. Stonecipher v. Mitchell, 655 So.2d at 1385.
The evidence in the record indicates the Melancons moved to Baton Rouge after Kevin Melancon accepted a job in Baton Rouge. Although they testified at trial of their desire to live in a "new" home, there was no evidence presented of the intellectual gratification living in this home would have brought them. It is apparent the plaintiff's overriding concern in buying this house was for shelter, comfort, and location in an area within their financial means, and close to Kevin Melancon's new job. Because of the absence of evidence in the record regarding the nonpecuniary interest the sale of this house would satisfy, we find the jury erred in awarding damages for mental anguish, aggravation and inconvenience and we reverse the award of such damages.

Attorney's Fees
The judgment awarded the following with respect to attorney's fees:
Attorney fees in the amount of nineteen thousand one hundred twenty seven and 10/100 (19,127.10) Dollars through September 23, 1996 plus legal interest on all unpaid amounts from the date of judgment until paid; plus all reasonable attorney fees incurred subsequent to September 23, 1996 plus legal interest on said amount all as to be determined by this Court after hearing. (This particular is adjudged pursuant to item number ten on the verdict form.)
The defendants argue the award of attorney's fees is not warranted and the amount claimed is grossly excessive given the circumstances of the case, while the plaintiffs have answered the appeal seeking an increase in the amount of attorney's fees.
The evidence presented at trial regarding the attorney's fees incurred by the plaintiffs consisted of an itemized bill for services rendered by the Melancons' attorneys in the amount of $19,127.10. This amount reflected all services performed until September 24, 1996, the first day of trial. Kevin Melancon testified he had reviewed the bill and agreed that it reflected all work done on his case until that time. The accuracy of the bill was not disputed at trial. Given the record presented, we find the jury did *1018 not abuse its discretion in awarding $19,127.10 in attorney's fees. See Dupree-Simpson Farms v. Helena Chemical Company, 28,739, 28,740, p. 9 (La.App. 2nd Cir. 10/30/96); 682 So.2d 838, 843. This assignment of error is without merit. We decline to determine the amount of attorney fees incurred subsequent to September 23, 1996, and defer to the finding of the trial court after a hearing on that matter in accordance with the judgment of the trial court.

Credit for Use
Defendants' final assignment of error argues the $1,876.15 awarded by the jury for the plaintiff's use of the home was grossly inadequate. Defendants assert this figure should be raised to allow a credit of between $600 and $750 per month for the twenty-two months the plaintiffs spent in the house.[5]
Compensation for the buyer's use of a defective product is not automatically granted by the courts. The seller has the burden of proving the value of the buyer's use of the product. However, even the value of extensive use may be overridden by great inconveniences incurred because of the defective nature of the thing and constant interruptions in service caused by the seller's attempts to repair. Boudreaux v. Harvey, 629 So.2d 429, 431 (La.App. 3rd Cir. 1993).
The evidence presented of the value of the Melancons' use was testimony by Lenell Melancon that they would have had a comparable note by living elsewhere, but without the inconvenience and aggravation. The exhibit reflecting how much of the loan had been paid indicated the Melancons' daily per diem on the loan to be $21.21. However, defendants did not present any evidence on the rental values of a comparable house in the Denham Springs area.
After review of the record, we find the defendants did not establish the value of the Melancons' use of the home. We find this assignment of error is without merit. Further, we decline to award a credit for use for the period of time while the appeal is pending due to the suspensive nature of the appeal filed by the defendants.

CONCLUSION
Based on our review of the record, we find the trial court was correct in holding the New Home Warranty Act inapplicable to the facts of this case. The judgment of the trial court is affirmed and all awards made by the trial court are affirmed with the exception of the award of $22,000.00 for the Melancons' non-pecuniary damages, which is reversed. The matter is also remanded to the trial court for the limited purpose of holding a hearing on the amount of attorney's fees the Melancons are entitled to for services rendered after September 23, 1996. Costs of the appeal are assessed equally between the parties, Kevin and Lenell Melancon, and Tommy Poirrier and Sunshine Construction Company, Inc.
AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.
FITZSIMMONS, J., concurs and assigns reasons.
FITZSIMMONS, Judge, concurring, with reasons.
I respectfully concur in the opinion. I believe that plaintiff presented sufficient evidence of nonpecuniary damages through testimony about Mrs. Melancon's allergies, her concern about mold and mildew, and the effect on her allergies. However, plaintiffs did not prove that the defendants knew or should have known that the failure to disclose the information about the water damage would affect the allergies and comfort of Mrs. Melancon, and cause her more than mere inconvenience.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] There was conflicting testimony at trial of whether the $3,600.00 cash settlement was tied to the Melancons signing a hold harmless agreement and giving up all further claims against Poirrier arising out of the water damage.
[3] The judgment signed by the trial court reflected the attorney's fees were $19,127.10, which was the amount of the invoices submitted by counsel for the Melancons.
[4] LSA-R.S. 9:3143(1) defines "builder" as "any person, corporation, partnership, or other entity which constructs a home, including a home occupied initially by its builder as his residence." LSA-R.S. 9:3143(6) defines "owner" as" the initial purchaser of a home and any of his successors in title to a home during the time the warranties provided under this Chapter are in effect."
[5] The plaintiffs lived in the house for twenty-two months prior to trial. Defendants also assert a credit for use should be given for the plaintiff's use of the house during the pending of the appeal.