21 So.3d 353 (2009)
Kimberly K. LeBLANC and Albert LeBlanc
v.
Dr. William Nicholas LANDRY, III.
No. 2008 CA 1643.
Court of Appeal of Louisiana, First Circuit.
June 24, 2009.
Writ Denied October 2, 2009.
*356 James A. Marchand, Jr., Laurie M. Pennison, Frank E. St. Philip, II, Covington, Louisiana, for Plaintiffs/Appellants, Kimberly K. LeBlanc and Albert LeBlanc.
Deborah Deo Gracias Trahan, Emily G. Couvillon, Covington, Louisiana, for Defendant/Appellee, Dr. William Nicholas Landry, III.
Before PARRO, McCLENDON, and WELCH, JJ.
McCLENDON, J.
In this medical malpractice action, the plaintiffs appeal the judgment of the trial court, in accordance with the jury verdict, dismissing their lawsuit following a verdict in favor of the defendant doctor. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On February 6, 1995, Kimberly K. LeBlanc gave birth to a healthy baby boy, Austin, delivered by Caesarian section by her obstetrician, Dr. William Nicholas Landry, III. Austin was the first child born to then twenty-seven-year-old Ms. LeBlanc and her husband, Albert LeBlanc. During the delivery, bleeding was noted on the left side of her uterus, and the left uterine artery was ligated, or sutured, without difficulty. Two days later, Ms. LeBlanc and the baby were discharged from the hospital. Ms. LeBlanc followed up with Dr. Landry for a two-week postpartum office visit on February 21, 1995, with normal and expected findings.
However, on March 4, 1995, Ms. LeBlanc began experiencing heavy vaginal bleeding and was taken to the hospital by ambulance. Dr. Landry was notified, and prior to his arrival, he issued orders for blood products, medications to contract the uterus, and antibiotics. Upon Dr. Landry's arrival and examination, Ms. LeBlanc's bleeding was resolving. He ordered cultures and a pelvic ultrasound, both of which had negative findings. Ms. LeBlanc responded well to the medications, and Dr. Landry diagnosed Ms. LeBlanc with subinvolution of the uterus.[1] *357 Ms. LeBlanc was discharged from the hospital on March 6, 1995. A follow-up examination at Dr. Landry's office on March 15, 1995, was within normal limits.
On March 22, 1995, Ms. LeBlanc was again taken to the hospital following another episode of heavy bleeding. Dr. Landry again ordered blood products and various medications. Another pelvic ultrasound was ordered, which revealed a potential bleeding site on the left side of the uterus. After obtaining Ms. LeBlanc's consent, she was taken to surgery by Dr. Landry and placed under general anesthesia for further investigation into the source of the bleeding. Dr. Landry performed a physical examination, hysteroscopy to visualize inside the uterus, curettage to remove any remaining placenta materials inside the uterus, and a laparoscopy through the abdomen. Despite these procedures, an active bleeding site was not located. Dr. Landry continued conservative treatment, as Ms. LeBlanc was responding well. Ms. LeBlanc was discharged from the hospital on March 24, 1995. It was Dr. Landry's opinion that Ms. LeBlanc was suffering from an atypical presentation of subinvolution of the uterus.
Upon discharge, the LeBlancs sought a second opinion from Dr. Theodore Brustowicz, hoping to identify the source of the bleeding. Dr. Brustowicz readmitted Ms. LeBlanc to the hospital that same day with a diagnosis of chronic endometritis.[2] Dr. Brustowicz noted no active bleeding, and he continued treatment conservatively with rest and medications similar to those ordered by Dr. Landry. Ms. LeBlanc was discharged from the hospital on March 27, 1995. A follow-up visit to Dr. Brustowicz's office on April 3, 1995, revealed that Ms. LeBlanc was doing well, and no active bleeding was noted.
On April 9, 1995, Ms. LeBlanc suffered another episode of bleeding. When Ms. LeBlanc arrived at the hospital, Dr. Gerard DiLeo was the on-call physician for Dr. Brustowicz. Ms. LeBlanc was admitted for observation and later that evening suffered another severe hemorrhaging episode. The LeBlancs declined further conservative treatment and instead opted for a hysterectomy to end the repeated hemorrhaging events, which was performed by Dr. DiLeo on that date.[3] Subsequently, a medical review panel was convened, which concluded that the evidence presented did not establish that Dr. Landry failed to meet the applicable standard of care. Thereafter, on September 25, 1998, the LeBlancs filed a petition for damages against Dr. Landry, asserting that Dr. Landry was negligent in failing to identify and repair the hemorrhaging uterine artery, which resulted in Ms. LeBlanc's hysterectomy.
Following a five-day jury trial, the jury concluded that Dr. Landry was not negligent in his treatment of Ms. LeBlanc. A judgment was signed in accordance with the jury verdict on January 2, 2008. The LeBlancs suspensively appealed, assigning the following as error:
1. The trial court erred in drafting an instruction and charging the jury with an erroneous instruction as to the standard of care applicable in medical malpractice cases.

*358 2. The trial court erred in charging the jury with instructions as to contributory negligence and comparative fault when there was no evidence submitted by either party as to these issues, thereby creating jury confusion, and an impermissible comment on the evidence.
3. The trial court erred in failing to follow the Louisiana rules of civil procedure in the selection of the jury, in failing to alternate peremptory challenges, in failing to allow back-striking of jurors, and in prematurely swearing in the partial panel of jurors prior to completing the selection process.

DISCUSSION
In their first assignment of error, the LeBlancs assert that the jury was improperly instructed that the standard of care that Dr. Landry, a medical specialist, owed to Ms. LeBlanc was the standard of care of the locale, instead of the national standard of other like specialists. The LeBlancs contend that the jury should have been instructed that they had the burden of proving the degree of care ordinarily practiced by physicians within the same medical specialty as Dr. Landry and that the failure to exercise this degree of care resulted in harm to them. Specifically, the LeBlancs assert that they requested the jury instruction for the "national" standard of care for specialists, whereas Dr. Landry requested the "local" standard of care jury instruction. The LeBlancs further contend that the trial court then took the local standard and added some language regarding the medical specialty, but otherwise left the local standard intact, thereby clearly misleading the jury as to what actual standard of care applied. Additionally, the plaintiffs urge that the jury was further confused after it was given contrary instructions when the trial court denied that a definition of the standard of care had been provided for in the jury instructions and then stated that it was a fact to be determined by the jury. Thus, according to the LeBlancs, a de novo review of the evidence by this court is required.
The defendant asserts, however, that the jury instructions were not erroneous and that a "locality rule" was not applied. Further, Dr. Landry contends that, since the jury instructions as a whole adequately and fairly advised the jury of the applicable law and the jury was not precluded from dispensing justice, a de novo review is not indicated herein. Thus, the manifest error standard of review is applicable.
Louisiana Code of Civil Procedure article 1792 B requires the trial court to instruct jurors on the law applicable to the cause submitted to them. The trial court is responsible for reducing the possibility of confusing the jury and may exercise the right to decide what law is applicable and what law the trial court deems inappropriate. Adams v. Rhodia, Inc., 07-2110, pp. 5-6 (La.5/21/08), 983 So.2d 798, 804; Baxter v. Sonat Offshore Drilling Inc., 98-1054, p. 6 (La.App. 1 Cir. 5/14/99), 734 So.2d 901, 906. The sufficiency of a jury charge must be determined in light of the charge as a whole. The charge must correctly state the law and be based on evidence adduced at trial. Baxter, 98-1054 at p. 6, 734 So.2d at 906.
Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. The trial judge is under no obligation to give any specific jury instructions that may be submitted by either party; the judge must, however, correctly charge the jury. If the trial court omits an applicable, essential legal principle, its *359 instruction does not adequately set forth the issues to be decided by the jury and may constitute reversible error. Adams, 07-2110 at p. 6, 983 So.2d at 804. Correlative to the judge's duty to charge the jury as to the law applicable in a case is a responsibility to require that the jury receives only the correct law. Id.; Melancon v. Sunshine Construction, Inc., 97-1167, p. 6 (La.App. 1 Cir. 5/15/98), 712 So.2d 1011, 1016.
Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Trial courts are given broad discretion in formulating jury instructions, and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law. The rule of law requiring an appellate court to exercise great restraint before upsetting a jury verdict is based, in part, on respect for the jury determination rendered by citizens chosen from the community who serve a valuable role in the judicial system. We assume a jury will not disregard its sworn duty and be improperly motivated. We assume a jury will render a decision based on the evidence and the totality of the instructions provided by the judge. Adams, 07-2110 at p. 6, 983 So.2d at 804.
However, when a jury is erroneously instructed and the error probably contributed to the verdict, an appellate court must set aside the verdict. In the assessment of an alleged erroneous jury instruction, it is the duty of the reviewing court to assess such impropriety in light of the entire jury charge to determine if the charges adequately provided the correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the charges adequately guided the jury in its deliberation. Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice. Adams, 07-2110 at p. 7, 983 So.2d at 804; Nicholas v. Allstate Insurance Company, 99-2522, p. 8 (La.8/31/00), 765 So.2d 1017, 1023.
The standard of review in determining whether an erroneous jury instruction has been given requires a comparison of the degree of error with the jury instructions as a whole and the circumstances of the case. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, p. 36 (La.App. 1 Cir. 3/11/94), 634 So.2d 466, 489, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094. Because the adequacy of jury instruction must be determined in the light of jury instructions as a whole, when small portions of the instructions are isolated from the context and are erroneous, error is not necessarily prejudicial. Furthermore, the manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts. Thus, on appellate review of a jury trial, the mere discovery of an error in the judge's instructions does not of itself justify the appellate court conducting the equivalent of a trial de novo, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case. Adams, 07-2110 at pp. 7-8, 983 So.2d at 805.
A plaintiff in a medical malpractice action is required to establish the standard of care applicable to the doctor, a violation by the doctor of that standard of care, and a causal connection between the doctor's alleged negligence and the plaintiff's injuries. See LSA-R.S. 9:2794 A; Pfiffner v. Correa, 94-0924, 94-0963, 94-0992, pp. 7-8 (La.10/17/94), 643 So.2d 1228, *360 1233. As to the applicable standard of care, LSA-R.S. 9:2794 A(1) requires that a plaintiff prove the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within the involved medical specialty.
In the case sub judice, the plaintiffs objected to the following jury instruction given by the trial court regarding the standard of care:
In order to discharge the burden of proving negligence on the part of the defendant, plaintiff must prove:
(1) the degree of knowledge or skill possessed, or the degree of care ordinarily exercised by physicians licensed to practice in Louisiana and actively practicing a particular medical specialty under similar circumstances;
(2) that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care or diligence, along with his best judgment in the exercise of that skill;
(3) that, as a proximate result of this lack of knowledge or skill, or failure to exercise this degree of care, plaintiff suffered injuries which would not otherwise have been incurred.
It is undisputed in this matter that the appropriate standard of care for the medical specialty of obstetrics and gynecology is the degree of care ordinarily practiced by physicians within the specialty of obstetrics and gynecology, i.e., the "national" standard of care. See LSA-R.S. 9:2794 A(1). The LeBlancs contend that, although correct in striking the language "in a similar community or locale," from the instruction, by keeping "in Louisiana," the trial court incorrectly instructed the jury as to a local standard. While it may have been erroneous to leave "in Louisiana" in the jury instructions, when evaluating the jury instructions as a whole, we conclude that the jury was not misled or confused to the extent that it was precluded from dispensing justice. See Adams, 07-2110 at p. 7, 983 So.2d at 804.
The jury instructions were lengthy, and this was the only reference therein to the standard of care and "in Louisiana." Shortly after the questioned instruction was given, the trial court continued its instructions regarding the standard of care for a physician practicing a medical specialty, including:
A physician is not required to exercise the highest degree of skill and care possible. He is not the insurer or guarantor of results, in the absence of an express agreement to that effect. When he undertakes the treatment of a case, he undertakes to use that skill and care ordinarily exercised by physicians in the same field of medical specialty as that in which he practices.
One of the duties of the physician is to make a diagnosis of the ailments of his patient, and if a physician fails to use the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in the same medical specialty, in making that diagnosis, then you may conclude that he was negligent in his conduct.
. . .
If you find that the physician exercised the degree of skill ordinarily employed under similar circumstances by the members of his profession in good *361 standing in the same medical specialty, and used reasonable care and diligence along with his best judgment in the application of his skill to the case, then you are to return a verdict in favor of the defendant in whose behalf you make such findings.
If, on the other hand, you find that the failure of the physician to treat properly was a substantial factor in bringing about or causing plaintiff's harm, and that failure was below the level of skill ordinarily employed under similar circumstances by the members of his profession in good standing and in the same medical specialty, then you must find against the defendant and in favor of the plaintiff.
Additionally, when discussing causation, the trial court instructed:
Rather, Louisiana law only requires that a physician show that he possesses the skill and competency of other physicians within his specialty....
Further, upon our review of the testimony of all of the experts, clearly no local standard was applied. There simply was no evidence presented that the standard in Louisiana differed from the standard for this medical specialty throughout the United States.
The LeBlancs contend, however, that this matter is similar to that in Todd v. Sauls, 94-10 (La.App. 3 Cir. 12/21/94), 647 So.2d 1366, writs denied, 95-0206, 95-0219 (La.3/24/95), 651 So.2d 289, wherein the third circuit concluded that the trial court gave erroneous competing jury instructions on the standard of care for both the locality standard and the standard of care for a specialist. In Todd, the defendant doctor was specifically referred to in that part of the instructions dealing with the community standard of care. Further, all three of the plaintiff's experts were from outside of Louisiana, while all seven of the defendant's experts were from Louisiana and that of those seven, six were local doctors practicing in Alexandria. The defendant doctor also emphasized the distinction between his local experts and plaintiff's reliance on out-of-state experts. Todd, 94-10 at pp. 4-5, 647 So.2d at 1371-72. Therefore, the trial court's reference to "similar community or locale" standards in the jury instructions served to confuse and mislead the jury.
The Todd case is clearly distinguishable. In this matter, no reference was made to "a similar community and locale" in any part of the jury instructions. Also, although both of the plaintiffs' experts were from outside of Louisiana, three of the four experts of the defendant, other than Dr. Landry himself, were practicing out of the state at the time of the trial.[4] And despite the LeBlancs' complaint that the defendant's expert was referred to in closing arguments as "Louisiana born and educated in New Orleans," Dr. Gary Dildy was living and practicing in Utah. Again, and unlike Todd, no evidence was presented of a different standard of care.
The plaintiffs argue, however, that the jury was also misled by the trial court's response to a question regarding the standard of care. Subsequent to the matter going to the jury, the jury had questions regarding the standard of care. In open court, the trial court stated to the jury that the term standard of care was not defined in their jury instructions, that the court could not give them a definition, and that it was a fact that was to be determined by them. Although the trial court's response *362 might be considered confusing, nonetheless, we find the jury instructions in this matter as a whole adequately and fairly advised the jury of the applicable law regarding the standard of care, and the jury was not precluded from dispensing justice. See Adams, 07-2110 at p. 10, 983 So.2d at 806. Thus, a de novo review is not warranted herein.
Because we find no error in the jury instructions warranting a de novo review, the jury's determination is subject to review for manifest error. The Louisiana Supreme Court has announced a two-part test for the reversal of a factfinder's determinations: 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, Dep't of Transp. and Dev., 617 So.2d 880, 882 (La. 1993). If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id., 617 So.2d at 882-83.
Further, where the findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the findings of fact. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Indeed, where the factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. Id., 549 So.2d at 845. This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony. Adams, 07-2110 at pp. 10-11, 983 So.2d at 806-07.
Upon a thorough review of the record in this matter, we conclude that the jury's finding that Dr. Landry was not negligent was not clearly wrong. All of the experts agreed that subinvolution of the uterus was involved. Further, following her treatment by Dr. Landry, Dr. Brustowicz and Dr. DiLeo, at least initially, continued to treat Ms. LeBlanc conservatively to try to save her childbearing ability. During Ms. LeBlanc's hysterectomy, Dr. DiLeo did discover a bleeding artery. However, Dr. DiLeo was never able to give a definitive opinion as to the etiology of the bleeding, stating that it was "a very mysterious and very unusual presentation." Nevertheless, Dr. DiLeo was clear that it was not an arterial venous malformation or pseudoaneurysm, as suggested by the plaintiffs' expert, Dr. Summers. Dr. DiLeo testified that Dr. Landry's treatment of Ms. LeBlanc was appropriate, especially in seeking to preserve Ms. LeBlanc's ability to bear children.
Clearly, the jury was presented with differing views of the evidence. The jury's decision to credit the views of the defendant's experts over that of the plaintiffs' experts was a reasonable one. Accordingly, the jury's conclusion that Dr. Landry *363 did not breach the applicable standard of care was not manifestly erroneous.
The LeBlancs next contend that the trial court erred in charging the jury with instructions as to contributory negligence and comparative fault when there was no evidence on these issues, thereby creating jury confusion.
The first question on the verdict form was whether Dr. Landry was negligent in his treatment of Ms. LeBlanc. The jury specifically answered, "No." Having exonerated Dr. Landry from liability, the jury did not reach the second interrogatory concerning any other person's or entity's negligence in the treatment of Ms. LeBlanc, nor did it get to the third interrogatory regarding any contributory negligence specifically on the part of the LeBlancs. Thus, the issue of anyone else's negligence never became an issue for the jury, and there was no reason to be influenced or confused by the complained-of instructions. Under these circumstances, any error regarding the trial court's instructions as to contributory negligence and comparative fault was harmless. See Williams v. Griffin, 422 So.2d 199, 202 (La.App. 4 Cir.), writ denied, 423 So.2d 1182 (La.1982).
Lastly, the LeBlancs complain about various aspects of the jury selection process. However, a review of the record shows no objections with regard to the method of the jury selection by the LeBlancs prior to the entire jury having been accepted and sworn. See LSA-C.C.P. art. 1766 C. Accordingly, having failed to object to the action of the court and their grounds therefor, the LeBlancs are precluded from raising this issue for the first time on appeal.

CONCLUSION
For the foregoing reasons, the judgment of the trial court entered in conformity with the jury verdict is affirmed. Costs of this appeal are assessed to the plaintiffs, Kimberly K. LeBlanc and Albert LeBlanc.
AFFIRMED.
WELCH J., concurs in part and dissents with reasons.
WELCH, J., concurring in part and dissenting in part.
I respectfully concur in part and dissent in part with the majority opinion in this case. I agree with the majority's conclusion that the plaintiffs' failure to timely object to the trial judge's procedure with regard to the exercise of peremptory challenges during the jury selection process constituted a waiver of that objection, even though the procedure used by the trial judge was, in my opinion, unorthodox and contrary to the method dictated by La. C.C.P. art. 1766(B).
However, I disagree with the majority's conclusion that while "it may have been erroneous to leave `in Louisiana' in the jury instructions" concerning the appropriate standard of care, the jury was not misled or confused to the extent that it was precluded from dispensing justice. The trial judge's instruction was erroneous and incorrect as a matter of law, and I believe the record demonstrates that the instruction did not adequately guide the jury and misled the jury to the extent that it was prevented from dispensing justice.
In a medical malpractice action based on the negligence of a licensed physician, the plaintiff has the burden of proving, among other things:
The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; *364 and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians ... within the involved medical specialty.
La. R.S. 9:2794(A)(1).
Essentially, La. R.S. 9:2794(A)(1) provides two standardsone for specialist and one for general practitioners. Specialists are subject to a common standard to be discerned from within their specialty (generally referred to as "the national standard"), while general practitioners are held to the standards prevailing in the community or locale in which they practice and under similar circumstances (generally referred to as "the local standard"). See Leyva v. Iberia General Hospital, 94-0795 (La.10/17/94), 643 So.2d 1236, 1238-1239; Ardoin v. Hartford Ace. & Indem. Co., 360 So.2d 1331, 1340 (La.1978).
In this case, it was not disputed that Dr. Landry was a licensed physician practicing in the specialty of obstetrics and gynecology and that the alleged acts of malpractice raised issues peculiar to the specialty of obstetrics and gynecology. Therefore, the appropriate standard of care for Dr. Landry was the degree of care ordinarily practiced by physicians within the specialty of obstetrics and gynecology, or in other words, the national standard. However, the standard of care instruction given by the trial judge, while containing some language concerning a medical specialty, specifically included a reference to a locale or community"in Louisiana" and further incorporated the mitigating phrase"under similar circumstances"both of which are components of the local standard. Thus, the trial judge gave a legally incorrect instruction on the applicable standard of care.
When the trial judge's erroneous instruction is considered in light of the fact that both of the plaintiffs' experts were from outside of Louisiana and all of the defendant's experts were either practicing or licensed to practice in Louisiana at the time of the alleged malpractice, I believe that the instruction was confusing and did not adequately guide the jury in its deliberation.
The confusion of the jury regarding the applicable standard of care is evidenced by the fact the jury specifically asked the trial judge for clarification on the standard of care, to which the trial judge responded that the standard of care was not defined in their instructions (even though a legally incorrect instruction had previously been provided), that he could not give them a definition, and that the standard of care was a fact to be determined by them. The trial judge's response in this regard not only exacerbated the jury's apparent confusion concerning the applicable standard of care, but it also demonstrates the trial judge's failure to properly assist the jury by explaining the correct and applicable law.
Given the combination of all of these errors, the trial judge's erroneous jury instructions confused the jury to the extent that it was precluded from dispensing justice and, therefore, its verdict should be set aside. Thus, I respectfully dissent in part.
NOTES
[1] Subinvolution of the uterus has been defined as the failure of the uterus to return to its normal size after childbirth and is an anatomical cause of delayed postpartum uterine bleeding. Mosby's Medical Dictionary, 8th edition, 2009, defines uterine subinvolution, in pertinent part, as:

delayed or absent involution of the uterus during the postpartum period. The causes of subinvolution include retained fragments of placenta, uterine fibromyomas, and infection. Regardless of the cause of the condition, it is characterized by longer and heavier bleeding after childbirth and, on pelvic examination, a larger and softer uterus than would be expected at that time.
[2] Endometritis has been defined as a cause of subinvolution of the uterus.
[3] Dr. DiLeo discovered a bleeding artery while performing the hysterectomy.
[4] The plaintiffs' expert, Dr. Paul Summers, was a practicing OB/GYN in Salt Lake City, Utah, as was the defendant's expert, Dr. Gary Dildy. Additionally, the defendant's experts, Dr. Brustowicz and Dr. DiLeo, were living in Florida at the time of the trial.