KUHN, J.
 

 | gDefendant-appellant, the State of Louisiana, through the Department of Transportation and Development (DOTD), appeals the trial court’s judgment rendered after a jury’s verdict ultimately concluded that it was liable to plaintiffs-appellees, William “Will” Abney, Jr., his ex-wife Amanda D’Angela, and their three minor children (collectively the Abneys), for twenty percent of the damages they sustained in a vehicular accident.
 
 [1]
 
 For the reasons that follow, we vacate the judgment and remand the case for a new trial.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 At approximately 7 p.m., February 8, 2000, the Abneys were returning to their home located off Howze Beach Road with Will driving, Amanda in the front passenger seat, and the children in the back in their car seats. As their car proceeded in a southerly direction down Howze Beach Road, a SUV driven in an easterly direction by Stephanie Smith pulled out of a gas station situated on the corner at a T-intersection of Oak Harbor Boulevard, crossed two lanes of travel and, without stopping, attempted a left turn onto the favored Howze Beach Road. As the Smith vehicle attempted to turn left into the Ab-neys’ lane of travel, the SUV collided directly into their car. The Abneys were injured as a result of the collision, with Will suffering serious injuries, particularly
 
 *282
 
 to his right leg including his anterior cruciate ligament and knee.
 
 [2]
 

 On the day of the accident, Oak Harbor Boulevard, a four-lane roadway separated by a median that ended at Howze Beach Road, was controlled by a single stop sign located on the right-hand side of Oak Harbor Boulevard, situated |sin the right-of-way that buttressed the gas station.
 
 [3]
 
 It is undisputed that the area was remote and dimly lit; besides the gas station, there was no other development at the T-intersection. It is also uncontested that Howze Beach Road, which consisted of two lanes, was the favored roadway.
 

 The Abneys filed a lawsuit naming Smith, her insurer, and DOTD as defendants.
 
 [4]
 
 Subsequently, the Abneys voluntarily dismissed Smith after amicably resolving their claims. The matter proceeded to a jury trial against DOTD. The jury ultimately rendered a verdict, finding DOTD twenty percent at fault.
 
 [5]
 
 The trial court signed a judgment in conformity with this determination by the jury and DOTD appeals.
 

 PROPRIETY OF JURY INTERROGATORIES AND INSTRUCTIONS
 

 The relevant interrogatories on the verdict form stated:
 

 1. Do you find that on the date of the accident there [were] one or more hazardous conditions at the intersection of Howze Beach Road and Oak Harbor Boulevard in Slidell, Louisiana?
 

 Yes_ No_
 

 If your answer to Question # 1 is “yes,” proceed to Question # 2. If your answer is “no,” skip to the end, sign and date the form, and call the bailiff.
 

 2. Do you find that [DOTD] was responsible for any hazardous conditions on the date of the accident?
 

 Yes_ No_
 

 3. Do you find that these hazardous conditions caused or contributed to the accident?
 

 Yes_ No_
 

 4. Do you find that William Abney was negligent in the accident?
 

 Yes__ No_
 

 5. Do you find that another person was negligent in the accident?
 

 Yes_ No_
 

 6. What percentage of fault do you assign to the following (do not grant any percentage to those you find free from fault or negligence):
 

 
 *283
 
 Defendant, DOTD _
 

 Plaintiff William Abney _
 

 Another Person _
 

 TOTAL: 100%
 

 The verdict form may not be set aside unless the form is so inadequate that the jury is precluded from reaching a verdict based on correct law and facts.
 
 Ford v. Beam Radiator, Inc.,
 
 96-2787, p. 3 (La.App. 1st Cir.2/20/98), 708 So.2d 1158, 1160. Jury forms or interrogatories that are misleading or confusing may be reversible error.
 
 Id.
 
 Jury interrogatories must fairly and reasonably point out the issues to guide the jury in reaching an appropriate verdict. If the verdict form does not adequately set forth the issues to be decided by the jury
 
 (i. e.,
 
 omits an applicable essential legal principle or is misleading and confusing), such interrogatories may constitute reversible error.
 
 Guidry v. Bank of LaPlace,
 
 94-1758 (La.App. 4th Cir.9/15/95), 661 So.2d 1052, 1055,
 
 writs denied,
 
 95-2498, 95-2490, and 95-2477 (La.1/5/96), 666 So.2d 295 and 296.
 

 IfiTwo major areas of concern appear in the verdict form. First, Question # 2 references DOTD directly stating: “Do you find that [DOTD] was responsible for any hazardous conditions on the date of the accident?” Questions # 1 and # 3 simply inquire whether hazardous conditions existed and whether those hazardous conditions caused or contributed to the accident, without referencing DOTD as the responsible entity for those hazardous conditions. Secondly, in response to Questions # 2 and # 3, the verdict form fails to direct the jury, “If your answer ... is ‘yes,’ proceed to [the next question]. If your answer is ‘no,’ skip to the end, sign and date the form, and call the bailiff,” as it does for Question # 1. These shortcomings were not lost on the jury.
 

 After having been retired to deliberate, the jury sent notice to the trial judge that it had a question. In the presence of the parties’ attorneys, the trial judge stated:
 

 Okay, the question is: If in Question No. 6 the jury has determined that the defendant DOTD had 0 percent fault, do we need to complete Question[s] 7 through 11 [assessing damages for each of the five plaintiffs] ? The answer is no, but I have to bring them out here to tell them that. Isn’t that correct?
 

 Although defense counsel stated “I believe so, Your Honor,” plaintiffs’ attorney said, “Well, maybe not if 1 through 5 [are] inconsistent....” An exchange continued between the trial judge and the parties’ attorneys. Before returning the jury to the courtroom, the trial judge stated, “Bring them in. I’ll do something.” When the jury was returned to the courtroom, the following colloquy occurred:
 

 [BY THE COURT:]
 

 The answer to that is I can’t look at [Question] 6 in a vacuum because I don’t know what you have done for Questions 1 through 5, and I’m not allowed to inquire into that. So I’m going to send you back....
 

 BY A JUROR:
 

 Rlf we were to provide the answers to the first six questions, could you provide the answer?
 

 BY THE COURT:
 

 If I knew what the answers were to the first five questions, yes, then I could answer that question. But I don’t know what you have answered to the first five questions, so I can’t answer that question because what you have answered to the first five questions will have an impact on what happens at Question 6. I can’t even ask you if you have answered the first five questions. I’m not allowed to comment on the evidence.
 

 So I am going to send you back.
 

 
 *284
 
 The transcript reveals that after the jury re-retired to deliberate, the following occurred:
 

 BY THE COURT:
 

 I have another question from the jury. It says, Your Honor, does the jury need to complete Question[s] 7 through 11 based on the answers to Questions 1 through 6 below? Question 1, yes. Question 2, no. Question 3, yes. Question 4, no. Question 5, yes. Question 6, defendant DOTD 0 percent. Plaintiff William Abney, 0 percent. Another person, 100 percent.
 

 I think with that answer, yes, they need to complete the rest of the form. Don’t you? Tell me before I bring them in here.
 

 BY [PLAINTIFFS’ ATTORNEY]:
 

 Yes. Yes. Yes, we’ve got an inconsistent verdict.
 

 BY THE COURT:
 

 Yes, we do. Bring in the jury, please.
 

 The trial judge instructed the jury, “Based on these answers, yes, you must complete the verdict form.”
 

 A member of the jury then advised the trial judge that some of the jurors were having “a problem” with the word “hazardous” stating that “it makes no preference” and indicating “some of the references are indefinite.” The trial judge instructed:
 

 You heard all that testimony and you heard the jury instructions. You collectively, you need to deliberate and come up with an answer. I’m sure that among you if you’re all talking and deliberating that you can come to a conclusion as to what the words mean. And we are not allowed to go outside of what we’ve already told you. I can’t add nor subtract anything from what I’ve already — how I have already instructed you. They can’t add or subtract anything from the evidence or from their arguments or opening statements. So you have to work with what you have.
 

 The jury re-retired to deliberations and, approximately two hours later, returned with its verdict. The verdict form showed that the response “No” in Question #2 had been struck and replaced with “Yes.” In Question # 6, assigning percentage of fault, the response of “0%” had been replaced with “20%” for “Defendant, DOTD.” The jury also assessed damages in Questions # 7 through # 11.
 

 Initially, we note that before the jury was charged, DOTD objected to the use of the term “hazardous conditions” rather than “defect” in the interrogatories, noting the latter conformed to the substantive law articulated in La. R.S. 9:2800.
 
 [6]
 

 See
 
 La. C.C.P. art. 1798 C (requiring a party to object and specifically state the basis of his objection before the jury retires). On this element, the trial court instructed the jury the plaintiffs had to prove “[t]he thing was defective because it had a condition that created an unreasonable risk of harm.” The jury was also instructed “[t]he owner or custodian of a thing is answerable for damage ^occasioned by its ruin, vice or defect which cause damage,” and that “ ‘[a]n unreasonable risk of harm’ to others means that the likelihood that harm might occur and the seriousness of such harm if it did happen outweighs the importance to society of the custody of the thing and the
 
 *285
 
 way the owner or custodian has chosen to maintain the thing under the circumstances.”
 

 While the interrogatories may have more closely stated the substantive law as set forth in La. R.S. 9:2800 by referencing “defects,” we cannot say that the trial court abused its discretion in its use of the term “hazardous conditions,” which was so confusing or misleading as to preclude the jury from reaching a decision based on the correct law and the facts.
 
 See Ford v. Beam Radiator, Inc.,
 
 96-2787, p. 3 (La.App. 1st Cir.2/20/98), 708 So.2d 1158, 1160. But the trial court’s supplemental instructions to the jury compounded the less-than-accurate jury interrogatories.
 

 La. C.C.P. art. 1796 C, addressing supplemental jury instructions, states in pertinent part:
 

 The court, after giving notice to the parties, may recall the jury after they have retired:
 

 (1) To correct or withdraw an erroneous instruction.
 

 (2) To clarify an ambiguous instruction.
 

 (3) To inform the jury on a point of law which should have been covered in the original instructions.
 

 (4) To give such further instructions as may be appropriate.
 

 The trial court is required to instruct jurors on the law applicable to the cause submitted to them.
 
 See
 
 La. C.C.P. arts. 1792 A and 1796 B;
 
 LeBlanc v. Landry,
 
 2008-1643, p. 5 (La.App. 1st Cir.6/24/09), 21 So.3d 353, 358,
 
 writ denied,
 
 2009-1705 (La.10/2/09), 18 So.3d 117. The trial court is responsible for reducing the possibility of confusing the jury and may exercise the right to decide what law is applicable and what law the trial court deems inappropriate.
 
 LeBlanc,
 
 2008-1643 at p. 5, 21 So.3d at 358. The charge must correctly state the law and be based on evidence adduced at trial.
 
 Id.
 

 Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. The trial court must correctly charge the jury. If the trial court omits an applicable, essential legal principle, its instruction does not adequately set forth the issues to be decided by the jury and may constitute reversible error. Correlative to the judge’s duty to charge the jury as to the law applicable in a case is a responsibility to require that the jury receives only the correct law.
 
 Id.
 

 Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Trial courts are given broad discretion in formulating jury instructions, and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law. The rule of law requiring an appellate court to exercise great restraint before upsetting a jury verdict is based, in part, on respect for the jury determination rendered by citizens chosen from the community who serve a valuable role in the judicial system. We assume a jury will not disregard its sworn duty and be improperly motivated. We assume a jury will render a decision based on the evidence and the totality of the instructions provided by the judge.
 
 Id.
 

 But when a jury is erroneously instructed and the error probably contributed to the verdict, an appellate court must set aside the verdict. In the assessment of an alleged erroneous jury instruction, it is the duty of the reviewing court to assess such impropriety in light of the entire jury charge to determine if the charges Inadequately provided the correct
 
 *286
 
 principies of law as applied to the issues framed in the pleadings and the evidence and whether the charges adequately guided the jury in its deliberation. Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice.
 
 Id.
 
 The standard of review in determining whether an erroneous jury instruction has been given requires a comparison of the degree of error with the jury instructions as a whole and the circumstances of the case.
 
 Id.
 

 A supplemental instruction must be considered as an addition to the original instruction rather than as an independent charge. As long as the combined charges accurately cover the point of law at issue, no reversible error exists.
 
 Adams v. Rhodia, Inc.,
 
 2007-2110, p. 8 (La.5/21/08), 983 So.2d 798, 805.
 

 In this case, the trial court declined to clarify the ambiguous references to “hazardous conditions.” More importantly, the trial court failed to instruct the jury that in light of its responses to Questions # 2 and # 6, it could “skip to the end, sign and date the form, and call the bailiff’; or otherwise respond to the jury’s inquiry that it need not complete Questions # 7 through # 11, based on its answers to Questions # 2 and # 6. We cannot fathom that this failure and the trial court’s instruction, “Based on these answers, yes, you must complete the verdict form,” did not contribute to the verdict. At no time was the jury advised that its answer “[n]o” to the question whether DOTD “was responsible for any hazardous conditions on the date of the accident” and its assessment of
 
 “0%”
 
 fault to DOTD meant that it need not complete Question # 7 through # 11. Moreover, with the ambiguity in the definition of “hazardous conditions,” which the trial court declined to clarify, the jury was never advised whether the answers it supplied | n showed an inconsistent verdict.
 
 [7]
 
 Clearly, the instruction to the jury that “yes, you must complete the verdict form” answering Questions # 7 through # 11, which assessed amounts of damages sustained by each plaintiff, misled the jury to the extent that it was prevented from dispensing justice. Considering all these factors as a whole, we conclude that the failure of the interrogatories to direct the jury that a “no” answer to Questions # 2 and # 3 permitted it to skip to the end, as well as the supplemental instruction, “Based on these answers, yes, you must complete the verdict form,” likely misled the jury, thus interdicting the fact-finding process and tainting the verdict. Therefore, no weight should be accorded the jury verdict.
 

 Plaintiffs contend that DOTD failed to preserve its right to appeal either the failure of the verdict form to include the direction or the objection to the supplemental instruction as required by La. C.C.P. art. 1793 C. However, La. C.C.P. art. 1793 B requires that the trial court give accurate and necessary jury instructions and interrogatories based on the facts and evidence of the case. Accordingly, courts have held that where the jury instructions or interrogatories contain a “plain and fundamental” error, the contemporaneous objection requirement is relaxed and appellate review is not prohibit
 
 *287
 
 ed.
 
 Berg v. Zummo,
 
 2000-1699, p. 13 n. 5 (La.4/25/01), 786 So.2d 708, 716 n. 5. We find that the interrogatories and the supplemental instruction provided by the trial court on the issue of whether the jury had to assess damages in favor of each of the plaintiffs misstated the law and thus contained a “plain and fundamental” error which has 112lead us to relax the contemporaneous objection requirement.
 
 See Berg,
 
 2000-1699 at p. 13 n. 5, 786 So.2d at 716 n. 5.
 

 Generally, when a legal error interdicts the fact finding process, the manifest error standard no longer applies. If the record is otherwise complete, the reviewing court should conduct a
 
 de novo
 
 review.
 
 Franklin v. Franklin,
 
 2005-1814, p. 8 (La.App. 1st Cir.12/22/05), 928 So.2d 90, 94,
 
 writ denied,
 
 2006-0206 (La.2/17/06), 924 So.2d 1021. But there are occasions where the weight of the evidence is so nearly equal that a first-hand view of witnesses is essential to a fair resolution of the issues. Where such a need arises, the case should be remanded for a new trial.
 
 Id.; see Masters v. Courtesy Ford Co., Inc.,
 
 2000-1330 (La.6/30/00), 765 So.2d 1055, 1056;
 
 see also Diez v. Schwegmann Giant Supermarkets, Inc.,
 
 94-1089, p. 7 (La.App. 1st Cir.6/23/95), 657 So.2d 1066, 1071,
 
 writ denied,
 
 95-1883 (La.11/17/95), 663 So.2d 720.
 

 Because a preponderance of the evidence cannot be determined fairly from the cold record due to the substantial conflict in testimony on the condition of the single stop sign situated in the right-of-way that buttressed the gas station, remand is proper in this case. Furthermore, because the record presents substantial conflicts in the testimony and serious questions of credibility, we are convinced the interests of justice would best be served by remanding for a new trial.
 

 DECREE
 

 For these reasons, the trial court’s judgment is vacated, and the case is remanded for a new trial consistent with this opinion. Appeal costs are assessed against plaintiffs-appellees, William Abney, Jr. and Amanda D’Angela.
 

 VACATED AND REMANDED.
 

 [1]
 

 . Will and Amanda divorced after the accident, and Amanda remarried.
 

 [2]
 

 . Evidence established that Will’s medical bills exceeded $170,000.
 

 [3]
 

 . Subdivisions have developed in the area and Oak Harbor Boulevard has subsequently been extended across Howze Beach Road.
 

 [4]
 

 . Although St. Tammany Parish was also a named defendant, it was dismissed by summary judgment.
 

 [5]
 

 . The jury concluded that the Abneys had suffered $1,390,929.63 in damages, allotting $906,909.07 to Will; $25,925.01 to Amanda; and $15,554, $5,365.30, and $5,399.70, respectively, to each Abney child. The judgment states that DOTD was liable to the Abneys in the amount of $278,185.92, “representing twenty percent of the sum of $1,390,929.63, which sum equals the damages awarded totaling $959,153.08
 
 plus
 
 judicial interest from the date of judicial demand until end of trial on August 9, 2008, and which interest totals $431,776.55,” plus continuing judicial interest until paid, and all costs in the amount of $20,048.57.
 

 [6]
 

 . La. R.S. 9:2800 C states in relevant part:
 

 No person shall have a cause of action based solely upon liability imposed under [La. C.C. art.] 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or
 
 defect
 
 which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the
 
 defect
 
 and has failed to do so. (Emphasis added.)
 

 [7]
 

 . Although plaintiffs assert that the only evidence to support a finding of "hazardous conditions” was of things within DOTD's custody and control, because the jury was not apprised of what constituted a "hazardous condition,” it may have reasoned that the limited lighting at the intersection was a hazardous condition which caused the accident and for which DOTD was not responsible. Similarly, the jury may have considered Smith's erratic driving was a hazardous condition which caused the accident for which DOTD was not responsible.