**GEORGIA-PACIFIC, LLC, as Successor in Interest to Georgia-Pacific Corporation**

v.

**DRESSER-RAND COMPANY and Dresser-Rand Group, Inc.**

**NUMBER 2015 CA 2002**

Court of Appeal of Louisiana, First Circuit.

October 31, 2016

1132

Gary A. Bezet, Barrye Panepinto Miyagi, Sarah W. Anderson, Sean J. Whittington, Alexandra E. Rossi, Baton Rouge, LA and Eric Nelson, Atlanta, GA, Attorneys for Appellee, Plaintiff—Georgia-Pacific, LLC

Claude F. Reynaud, Claude F. Reynaud, III, Jeanne C. Comeaux, Scott N. Hensgens, Carroll Devillier, Jr., Baton Rouge, LA, Attorneys for Appellant, Defendant—

Dresser-Rand Company and Dresser-Rand Group, Inc.

BEFORE: WELCH, CRAIN, AND HOLDRIDGE, JJ.

WELCH, J.

The defendants, Dresser-Rand Company and Dresser-Rand Group, Inc. (collectively "Dresser-Rand"), appeal a judgment in favor of the plaintiff, Georgia-Pacific, LLC, as successor in interest to Georgia-Pacific Corporation ("Georgia-Pacific"), that awarded Georgia-Pacific damages, attorney fees, and costs and dismissed Dresser-Rand's reconventional demand. Georgia-Pacific has answered the appeal seeking an increase in attorney fees and costs for the defense of this appeal. For reasons that follow, we vacate the judgment on appeal, remand this matter for a new trial, and deny the answer to appeal as moot.

## FACTUAL AND PROCEDURAL HISTORY

Georgia-Pacific operates a pulp and paper mill at its Port Hudson facility in Zachary, Louisiana. In 2004, Georgia-Pacific announced plans to add an energy facility to provide power to the pulp and paper mill and to other parts of the facility. On December 8, 2004, Georgia-Pacific entered into a contract with Dresser-Rand for Dresser-Rand to provide certain equipment comprising the energy facility project's steam turbine generator ("the turbine") and to perform certain design, engineering, erection, and commissioning services associated with that turbine ("the contract"). According to the contract, Georgia-Pacific was to pay Dresser-Rand the sum of $9,493,850.00 for the equipment and its services.[1] The contract spe-cifically provided that the contract would be governed by and construed in accordance with Georgia law. The contract also contained the following pertinent warranty provisions:

**7. Warranties**

\* \* \*

c. [Dresser-Rand] warrants that:

(1) the Equipment will be of good quality and free from faults and defects in materials and workmanship;

(2) There shall be no failure of the Equipment or of any part or component thereof as a result of improper or inadequate design or selection of materials;

(3) the Equipment will meet the performance warranty . . .;

and

(4) the Equipment will be designed and built to meet the specifications set forth in the Contract;

for a period of twenty-four (24) months of operation from successful performance test or 36 months from shipment, whichever occurs first . . . .

d. [Georgia-Pacific] shall report any claimed defect to [Dresser-Rand] as soon as commercially reasonable. In the event of a breach of any of the warranties contained in this Paragraph 7, [Dresser-Rand] shall, at its sole cost and expense, promptly and immediately provide all labor, services, materials, tools, equipment and transportation as may be necessary to remove, repair, replace or modify the Equipment, or repair, replace or modify parts or components thereof, so as to enable the Equipment to meet the requirements of such warranties. . . . In the event that [Dresser-Rand], when notified, shall fail, refuse,

---

1. Although the contract attached to the petition provided that Georgia-Pacific was to pay the sum of $9,493,850.00, the parties subsequently agreed in the pre-trial order that the total price for Dresser-Rand's work was $10,425,956.00. The increase in the contract price was based on subsequent change orders to the turbine.

or neglect to take and complete such corrective action as is necessary to meet the requirements of such warranties, [Georgia-Pacific] at its option, shall have the right to perform or authorize others to perform such corrective action, and all costs and expenses thereof shall be for the account of [Dresser-Rand], [Georgia-Pacific] shall not proceed to perform such corrective action replace until [Dresser-Rand's] written concurrence, which shall not be unduly delayed or unreasonably withheld, is obtained.

\* \* \*

g. Unless otherwise agreed upon, [Dresser-Rand] shall not be liable for the cost of any repair, replacement, or adjustment to the equipment or parts made by [Georgia-Pacific] or for labor performed by [Georgia-Pacific] or others.

\* \* \*

THE FOREGOING WARRANTIES ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, WHETHER WRITTEN, ORAL, IMPLIED OR STATUTORY. [DRESSER-RAND] MAKES NO OTHER WARRANTY OR REPRESENTATION OF ANY KIND. ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE HEREBY DISCLAIMED.

On December 3, 2009, Georgia-Pacific filed a petition for damages against Dresser-Rand. In the petition, Georgia-Pacific alleged that at various times from December 2004 through the present (the date of the petition), Dresser-Rand did provide certain equipment comprising the turbine and perform certain design, engineering, erecting, and commissioning services associated with the turbine; however, Georgia-Pacific claimed that the turbine failed to operate as required by the contract and was defective. Specifically, Georgia-Pacific claimed that the turbine failed to generate sufficient power to comply with the contract's specifications, failed to meet the contract's performance guaranty, and did not operate properly according to the contract terms or in a consistent and reasonably designed, engineered, and constructed manner. Georgia-Pacific asserted that although it made several demands on Dresser-Rand to correct the deficiencies with the turbine, Dresser-Rand had failed or refused to correct the deficiencies or to perform the work and services required by the contract and its legal obligations. Georgia-Pacific further claimed that it would be forced to perform significant replacement or corrective work on the turbine so that it could function according to the contract and in a proper manner. Therefore, Georgia-Pacific sought damages from Dresser-Rand for breach of contract and breach of express warranty, as well as statutory penalties, attorney fees, and costs.[2]

In response, Dresser-Rand filed an answer and reconventional demand. Therein, Dresser-Rand essentially denied liability for Georgia-Pacific's claims and contended that it had complied with its obligations pursuant to the terms of the contract. In addition, Dresser-Rand contended that Georgia-Pacific had failed to pay the sums of $239,230.50 toward the contract price, $7,055.49 for various change orders

---

**2.** In its petition, Georgia-Pacific also asserted claims against Dresser-Rand for redhibition and rescission of the contract, negligence, and professional negligence. However, Georgia-Pacific voluntarily dismissed its claims based on redhibition and for recission of the contract. In addition, its claims based on negligence and professional negligence were dismissed following Dresser-Rand's peremptory exception raising the objection of prescription.

to the contract, and $342,704.12 for non-warranty work performed on the turbine by Dresser-Rand.

Following discovery, as well as various motions and stipulations, the parties agreed that their dispute focused on issues relating to the turbine's trip and throttle valves, which were essential to starting up and shutting down the turbine. While this suit was pending, Georgia-Pacific hired Alstom Power Inc., another turbine manufacturer, to replace the turbine's trip and throttle valves, which cost Georgia-Pacific the sum of $2,061,903.62. Therefore, Georgia-Pacific sought to recover this expense from Dresser-Rand pursuant to the contract and its warranty provisions, as well as attorney fees and expenses. However, Dresser-Rand continued to claim that the turbine met the performance guarantees, that all of the problems with the turbine were resolved or in the process of being resolved when suit was filed, that it was unnecessary for Georgia-Pacific to replace the trip and throttle valves, that it was not afforded the opportunity by Georgia-Pacific to repair or to continue any work on the trip and throttle valves, and that Georgia-Pacific did not obtain its written concurrence for the replacement of the trip and throttle valves by Alstom Power. Therefore, Dresser-Rand argued that it was not liable for the replacement cost and expenses.

Georgia-Pacific subsequently stipulated that it owed Dresser-Rand the sum of $239,230.50 toward the contract price. The matter then proceeded to a jury trial on the remaining issues on April 21, 22, 23, 24, and 27, 2015. On April 27, 2015, the jury returned a verdict in favor of Georgia-Pacific in the amount of $2,061,903.62. On July 9, 2015, pursuant to a motion to tax costs and to award attorney fees (in accordance with the terms of the contract), the trial court awarded |₆Georgia-Pacific attorney fees, expert fees and expenses, and costs in the total amount of $741,337.46.[3]

On July 16, 2015, the trial court signed a judgment awarding Georgia-Pacific damages in the amount of $1,822,673.12,[4] plus legal interest from the date of judicial demand; awarding attorney fees, expert fees and expenses, and costs to Georgia-Pacific in the amount of $741,337.46, plus legal interest from the date of the judgment; and dismissing Dresser-Rand's reconventional demand. From this judgment, Dresser-Rand now appeals raising ten assignments of error, plus two alternative assignments of error, which present three main issues for this court's review: (1) whether the trial court's jury instructions were sufficient; (2) whether the trial court erred in awarding Georgia-Pacific all of the attorney fees it incurred in this suit; and (3) whether the trial court erred in casting Dresser-Rand with costs of expert witness fees, because the fees awarded were not limited to the experts preparation for and testimony at trial.[5] Additionally,

---

**3.** Prior to trial, the parties stipulated that the issue of attorney fees would be submitted to the trial court after the jury rendered its verdict.

**4.** The trial court reduced the jury's verdict of $2,061,903.62 by $239,230.50, the amount Georgia-Pacific previously stipulated that it owed Dresser-Rand. ($2,061,903.62 – $239,230.50 = $1,822,673.12).

**5.** On appeal, Dresser-Rand also asserts that the trial court erred in excluding certain evidence proffered by Dresser-Rand pertaining to the number of minutes the steam in the turbine was above specified heat tolerance and additional evidence of the seriousness of the problems with the Metso boiler. However, in its brief, Dresser-Rand failed to brief this issue; therefore, we deem this assignment of error as abandoned. See Uniform Rules—Courts of Appeal, Rule 2–12.4(B)(4); **Valure v. Valure,** 96–1684 (La.App. 1 Cir. 6/20/97), 696 So.2d 685, 688.

Georgia-Pacific answered the appeal seeking an increase in its award of attorney fees and costs for defending this appeal.

## JURY INSTRUCTIONS AND JURY INTERROGATORIES *(Assignment of Error Numbers 1-9)*

In Dresser-Rand's first nine assignments of error, it complains that the trial court's jury instructions and jury verdict form (or jury interrogatories) were woefully incomplete and insufficient, amounting to reversible error and warranting ₇a *de novo* review of this matter, or alternatively, a remand for a new trial. We agree.

 The trial court is required to instruct jurors on the law applicable to the cause submitted to them. See La. C.C.P. arts. 1792 and 1793. The trial court is responsible for reducing the possibility of confusing the jury and may exercise the right to decide what law is applicable and what law is inappropriate. **Abney v. Smith,** 2009–0794 (La.App. 1 Cir. 2/8/10), 35 So.3d 279, 285, writ denied, 2010–0547 (La. 5/7/10), 34 So.3d 864. The instructions must correctly state the law and be based on evidence adduced at trial. *Id.*

 The trial court is not required to give the precise instruction submitted by either party, but must give instructions that properly reflect the law applicable in light of the facts of the particular case. **McCrea v. Petroleum, Inc.,** 96–1962 (La. App. 1 Cir. 12/29/97), 705 So.2d 787, 791. Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. **Abney,** 35 So.3d at 285. The trial court must correctly charge the jury. *Id.* If the trial court omits an applicable, essential legal principle, its instructions do not adequately set forth the issues to be decided by the jury and may constitute reversible error. *Id.* Correlative to the trial court's duty to charge the jury as to the law applicable in

a case is a responsibility to require that the jury receives only the correct law. *Id.*

 Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. *Id.* Trial courts are given broad discretion in formulating jury instructions, and a trial court judgment should not be reversed so long as the instructions correctly state the substance of the law. *Id.* But when a jury is erroneously instructed and the error probably contributed to the verdict, an appellate court must set aside the verdict. *Id.* In the assessment of an alleged ₈erroneous jury instruction, it is the duty of the reviewing court to assess such impropriety in light of the entire jury instruction to determine if the charges adequately provided the correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the instructions adequately guided the jury in its deliberation. *Id.* at 285–286. Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice. *Id.* at 286. The standard of review in determining whether an erroneous jury instruction has been given requires a comparison of the degree of error with the jury instructions as a whole and the circumstances of the case. *Id.*

 Likewise, the jury's verdict form may not be set aside unless the form is so inadequate that the jury is precluded from reaching a verdict based on correct law and facts. *Id.* at 283. Jury forms or interrogatories that are misleading or confusing may be reversible error. *Id.* Jury interrogatories must fairly and reasonably point out the issues to guide the jury in reaching an appropriate verdict. *Id.* If the verdict form does not adequately set forth the issues to be decided by the jury (*i.e.,*

omits an applicable essential legal principle or is misleading and confusing), such interrogatories may constitute reversible error. *Id.*

In this case, the trial court's *entire* instruction to the jury was as follows:

This is a contract case between plaintiff, Georgia-Pacific, and the defendant, Dresser-Rand. A contract is the law between the parties. This contract contains an exclusive warranty provision. An exclusive warranty provision applies unless the warrantor, which would be Dresser-Rand, has been unable or unwilling to repair or replace any defective part within a reasonable period of time.

That's up to you to decide whether there's been a reasonable period of time. That is your entire jury instruction.

After receiving these instructions, the jury was provided a verdict form with the following interrogatories to answer:

1) Does Dresser-Rand owe Georgia Pacific[?]

___ ___
Yes No
What amount? _____

2) Does Georgia-Pacific owe Dresser-Rand?"

___ ___
Yes No
What amount? _____

Notably, both Dresser-Rand and Georgia-Pacific timely objected to the brevity and inadequacy of both the jury instructions and the jury verdict form. <u>See</u> La. C.C.P. art. 1793. The jury then returned its verdict, responding affirmatively to the first question, writing $2,061,903.62 in the

blank for the amount, responding negatively to the second question, and writing $0.00 in the blank for the amount.

Dresser-Rand argues that the trial court's instructions were insufficient and incomplete because the trial court failed to give any general instructions as to the burden of proof, the weighing of evidence, credibility determinations, the role of expert testimony, Georgia law on contracts and the interpretation of contacts, and causation. Dresser-Rand also argues that the trial court "deliberately ignored" the suggested civil jury charges provided by the Louisiana Supreme Court.[6]

In addition, Dresser-Rand complains more specifically that the trial court failed to give instructions it requested pertaining to: specific UCC cases that were applicable under Georgia law on contracts with respect to the design, construction, and repair of complex machinery; the law of limitation of warranties; the fact that the turbine fell into a class of custom-made, complex commercial machinery for which more time was allowed to make repairs and modifications; principles of Georgia law providing that when a manufacturer complies with the plans and specifications agreed upon by the parties, the manufacturer (*i.e.,* Dresser-Rand) cannot be held responsible for unsatisfactory results; the fact that Dresser-Rand substantially complied with the contract because the turbine was successfully used for the purpose for which it was intended for five years; the fact that Dresser-Rand's limited warranty and the contract's requirement that Dresser-Rand's written consent be obtained before Georgia-Pacific could

---

**6.** We note that Georgia-Pacific contends that the trial court's opening instructions included, among other things, instructions on burden of proof, credibility determinations, and how to weigh the evidence, and that such opening instructions were sufficient as to those issues. However, we note La. C.C.P. art. 1792(B) clearly requires the trial court to instruct the jurors on the applicable law "[a]fter the trial of the case and the presentation of all of the evidence and arguments." As such, our discussion herein is limited to the instructions given to the jury at the conclusion of trial.

make its own repairs or hire a third party to do so; and principles of Georgia law that usage by Georgia-Pacific of the trip and throttle valves for five years foreclosed full reimbursement for installation of the brand new valves from a third party, because the new valves amounted to an upgrade from the specifications for the trip and throttle valves in the contract.

Dresser-Rand also contends that the jury instructions improperly used the word "exclusive" without explanation of what the word meant in the context of the contract and that the word "limited" should have been used to describe Dresser-Rand's contractual warranty on the trip and throttle valves. Lastly, Dresser-Rand submits that the jury verdict form was essentially a "coin toss" that provided no guidance to the jury and did not accurately set forth the issues that the jury needed to decide.

In response, Georgia-Pacific posits that Dresser-Rand's entire appeal focuses on its contention that the jury instructions and verdict form were too short to be adequate and that most of Dresser-Rand's requested instructions that were omitted by the trial court were not "instructions" at all, but rather were legal arguments or comments on the evidence that supported Dresser-Rand's position. Georgia-Pacific contends that the brevity of the trial court's instructions and the jury verdict form did not prevent the jury from dispensing justice, the evidence at trial supported the jury's verdict, and thus the judgment rendered in accordance with the verdict should be affirmed.

However, based on our review of the record, the issues to be determined at trial, the evidence at trial, and the instructions given to the jury, we find that the trial court's instructions to the jury were incomplete and insufficient. Although the trial court did instruct the jury that this was a contract case, that the contract was the law between the parties, and that the contract contained a warranty provision, the trial court omitted several applicable, essential legal principles. As noted by Dresser-Rand, the trial court did not instruct the jury as to general principles of contract law, the applicable burdens of proof (*i.e.*, Georgia-Pacific on its main demand and Dresser-Rand on its reconventional demand), and the essential legal elements (under Georgia law) of Georgia-Pacific's claims for breach of contract and/or breach of warranty for Dresser-Rand's claims against Georgia-Pacific, including breach, causation and assessment of damages.[7] Most of the factual evidence in this case focused on the performance of the trip and throttle valves and the causes of their alleged failures, and whether Dresser-Rand had breached the contract and/or its warranty provisions. Thus, an instruction as to the burden of proof and the necessary elements of Georgia-Pacific's claims against Dresser-Rand were critical to the jury's determinations on the issues before it. Without such an instruction as to the applicable law, the jury could not apply the law to the facts before it, and thus, could not properly dispense justice. Accordingly, because we find the trial court omitted several applicable, essential legal principles, we find that its

***

7. Because we find the jury was not adequately instructed on the applicable, essential legal principles with respect to the burden of proof, Georgia law on contracts, and the essential legal elements of each parties' claims, we need not address the trial court's failure to give the general civil jury charges suggested by the Louisiana Supreme Court or the propriety of the trial court's use of the term "exclusive" warranty rather than "limited" warranty. For the same reasons we also decline to address whether the specific instructions requested by Dresser-Rand, but excluded by the trial court (as set forth above), were applicable, essential legal principles.

jury instruction did not adequately set forth the issues to be decided by the jury and constitutes reversible error.

██ Likewise, we find that the trial court's error in failing to instruct the jury on the applicable law was further compounded by the inadequacy of the jury's verdict form. The verdict form simply asked the jury whether either party "owe[d]" the other party and if so, how much, and did not ask the jury to make any specific underlying factual findings to support such a determination, such as a finding of breach and causation of damages. Thus, the verdict form did not point out any of the issues to guide the jury in reaching an appropriate verdict.

Therefore, because we find the trial court's jury instructions omitted essential, applicable legal principles and its jury verdict form failed to adequately set forth the issues to be decided by the jury, no weight should be afforded to the jury's verdict and we hereby vacate those portions of the trial court judgment rendered in accordance with the jury verdict, *i.e.*, the award of damages in favor of Georgia-Pacific and the dismissal of Dresser-Rand's reconventional demand.

██ Generally, when a legal error, such as inadequate or improper jury instructions, interdicts the fact-finding process, the manifest error standard no longer applies. See **Abney**, 35 So.3d at 287. If the record is otherwise complete, the reviewing court should conduct a *de novo* review. **Abney**, 35 So.3d at 287. But, there are occasions where the weight of the evidence is so nearly equal that a first-hand view of the witnesses is essential to a fair resolution of the issues. *Id.* Where such a need arises, the case should be remanded for a new trial. *Id.*

In this case, a critical issue to be resolved was whether the turbine's trip and throttle valves performed in accordance with the contract or whether they were defective. As to that issue, the record presents substantial conflicts in both the highly technical and complicated expert testimony and the lay testimony which give rise to questions of credibility of the witnesses. Due to the substantial conflict in testimony concerning the pertinent issue in this case, a preponderance of the evidence cannot be determined fairly from the cold record. Therefore, we are convinced that the interests of justice would best be served by a new trial where credibility determinations and resolutions of the conflicting testimony can be made by the finder of fact. Accordingly, this matter is remanded for a new trial. Accord **Abney**, 35 So.3d at 287.

## ATTORNEY FEES AND COSTS (*Alternative Assignment of Error Numbers 11 and 12; Answer to Appeal*)

In these alternative assignments of error, Dresser-Rand contends that if the judgment rendered in accordance with the jury verdict is affirmed, then the trial court erred in awarding Georgia-Pacific all of the attorney fees it incurred in this suit and in casting Dresser-Rand with costs of expert witness fees, which fees were not limited to preparing for and testifying at trial. In addition, Georgia-Pacific answered the appeal seeking an increase in its award of attorney fees and costs for defending this appeal.

The trial court's award of attorney fees and costs were rendered in furtherance of the jury's verdict. Since we found merit to Dresser-Rand's contention that the jury instructions and jury verdict form were insufficient, incomplete, and constituted reversible error, and since we have vacated the trial court's judgment in accordance with the jury verdict and remanded this matter for a new trial, the remainder of the trial court's judgment awarding attorney fees and costs in furtherance of the jury verdict must likewise be vacated.

Therefore, Dresser-Rand's alternative assignments of error and Georgia-Pacific's answer to appeal are moot and need not be addressed.

## CONCLUSION

For all of the above and foregoing reasons, the July 16, 2015 judgment of the trial court is vacated and this matter is remanded to the trial court for a new trial. The answer to appeal by Georgia-Pacific is denied as moot. The assessment of costs in this matter shall await final disposition.

**VACATED AND REMANDED; ANSWER TO APPEAL DENIED AS MOOT.**

Holdridge, J., concurs with reasons.

HOLDRIDGE, J., concurring.

I concur with the majority's decision. As in this case, when both the plaintiff and the defendant object to the inadequacy of jury instructions and the jury verdict form, the proper procedural remedy would be to request a stay and seek an expedited writ. *See* La. C.C.P. art. 1793(C); Uniform Rules, Courts of Appeal, Rule 4-4. The appellate court should provide relief in such a situation where all parties are of the opinion that the jury instructions and/or jury verdict form proposed by the judge are improper, inadequate, or contains legal error. The failure to take an expedited writ may lead to the unfortunate expense of having to re-try a case based upon judicial error. *See* Abney v. Smith, 2009–0794 (La.App. 1 Cir. 2/8/10), 35 So.3d 279, 285, writ denied, 2010–0547 (La. 5/7/10), 34 So.3d 864. This result could be avoided by the proper application for an expedited writ.

In cases where the appellate court remands a matter because of judicial error, the trial court should be encouraged to explore other options so as to avoid the expense of a new trial. The trial court could recall the original jury and allow the parties to voir dire the jurors to see if they remember the facts and to determine if a fair resolution of the matter could take place with the original jury hearing closing arguments and then being properly instructed and completing a proper jury verdict form/jury interrogatories. The trial court should also consider any other options agreed upon by the parties which may preclude the necessity for a new trial. For these reasons, I concur in vacating the trial court's judgment and remanding this matter back to the trial court for further proceedings.