Welch, J.
This action commenced with a suit for damages filed by the plaintiff, Dr. Sally Dobyns, against her former employer and the defendant herein, the Board of Supervisors for the University of Louisiana System on behalf of The University of Louisiana at Lafayette (the "Board"), wherein Dr. Dobyns alleged disability-based harassment and denial of accommodations in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 -11217, and the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301 et seq. , and retaliation in violation of the ADA and the Louisiana whistleblower statute, La. R.S. 23:967. Following a jury trial, the jury rendered its verdict in favor of Dr. Dobyns and against the Board on her retaliation claim and awarded damages to Dr. Dobyns in the amount of $ 25,000.00. In this appeal, the Board challenges the trial court's September 18, 2017 judgment rendered in accordance with the jury's verdict. For the following reasons, we affirm.
In a related, pending appeal-2018 CA 0488-Dr. Dobyns challenges the trial court's ruling that granted the Board's motion to dismiss her claim for attorney's fees with prejudice.
FACTS AND PROCEDURAL HISTORY
In August 1992, Dr. Dobyns was hired as an Assistant Professor at the University of Louisiana at Lafayette ("UL"). Dr. Dobyns was subsequently promoted to Associate Professor, then Full Professor, and finally, appointed as Director of the Center for Gifted Education and the Coordinator for the Master of Education ("M.Ed.") Program in Gifted Education.
Dr. Dobyns alleged that at all times pertinent hereto, she was a qualified individual with a disability within the meaning and intent of the ADA and the LEDL in that she had an actual impairment, had a record of impairment, and was regarded by the Board as disabled. Dr. Dobyns alleged that she suffered from severe allergies due to the many environmental allergens in south Louisiana, which resulted in a compromised immune system. Dr. Dobyns contended that on January 31, 2008, she advised the Board of her disability and that UL's then-acting Vice-President of Academic Affairs, Dr. Stephen Landry, made recommendations for a plan of action to accommodate her disability that still *916 allowed her to fulfill her academic duties at UL.
Thereafter, on October 15, 2008, Dr. Dobyns submitted a written request, styled as a request for accommodations ("Request for Reasonable Accommodations for Physical Disability"), to Dr. Landry, attaching letters from her treating physicians who recommended that during the winter months (i.e., December through February), she be allowed to work in a northern, non-pollinating climate in order to allow her compromised immune system to rest and reset. Dr. Dobyns included a plan for the ways that she would be able to fulfill her responsibilities to UL during the time she was away, including alternative scheduling augmented by distance learning options to meet the requirements for her courses. Dr. Dobyns stated that her department head, Dr. Christine Briggs, approved her proposed accommodation.
On November 24, 2008, Dr. Landry responded in writing to Dr. Dobyns's request, stating: "It is my understanding that you are requesting sick leave because of your documented medical conditions and hence you must apply for and document sick leave[,] which will be approved based upon both your accumulated hours of sick leave and the physician statements provided," and included an excerpt of the UL Faculty Handbook's "Policy on Utilization of Sick or Annual Leave."
According to her petition, Dr. Dobyns alleged that the Board accommodated her disability by allowing her to work from Connecticut during the winter months, where she was able to fulfill all of her responsibilities to UL, beginning in December 2008, without taking sick leave. Dr. Dobyns departed for Connecticut on November 26, 2008, without authorization from the Board to be absent from campus and without taking sick leave.
Dr. Dobyns claimed that her accommodation continued until Dr. Carolyn Bruder became Interim Vice-President of Academic Affairs at UL in January 2011. In January 2011, Dr. Dobyns submitted a request for compensation for the summers of 2009 and 2010. On February 14, 2011, she received an email from Dr. Bruder questioning her absence from the UL campus and why she had not applied for sick leave. In May 2011, Dr. Dobyns met with Dr. Bruder (along with Dr. Briggs), wherein Dr. Bruder informed Dr. Dobyns that her pay for the summers of 2009 and 2010 would be reduced for work Dr. Dobyns alleged she had already completed and for compensation that had already been approved. Dr. Dobyns claimed the reason given to her by Dr. Bruder was that she "had not been present" on the UL campus.
After repeatedly reporting what she alleged as disability-based harassment, denials of her repeated requests for continued accommodations, and retaliation, Dr. Dobyns filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights ("LCHR") on August 12, 2011, wherein she claimed:
Since May 2, 2011, I have been subjected to harassment, ridicule, and treatment different than others in the presence of my colleagues and Department Head, by Dr. Carolyn Bruder, Interim Vice President for Academic Affairs.... I have also been denied accommodations for my disability [handwritten].
According to Dr. Carolyn Bruder, she did "not agree with the rate of reimbursement" for summer work already approved and performed (as far back as the year 2000.)[.]
I believe that I have been discriminated against in violation of the Americans with Disabilities Act of 1990 (ADA) due to disability; and retaliation for opposing *917 practices made unlawful under Title VII of the Civil Rights Act of 1964, as amended.[1 ]
Thereafter, on August 15, 2011, Dr. Gerald Carlson, Dean of the College of Education, informed Dr. Dobyns that she was being removed from her position as Director of the Center for Gifted Education.
Dr. Dobyns subsequently filed suit against the Board on December 22, 2011.[2] Specifically, Dr. Dobyns alleged disability-based harassment and failure to accommodate in violation of the ADA and the LEDL, and retaliation in violation of the ADA and La. R.S. 23:967, in response to her complaints and protests that began in early 2011, when Dr. Bruder became Interim Vice-President for Academic Affairs at UL. Dr. Dobyns retired from UL in July 2013.
Following a six-day jury trial held February 6-13, 2017, the jury issued its verdict on February 13, 2017, in favor of Dr. Dobyns and against the Board on her retaliation claim and awarded damages to Dr. Dobyns in the amount of $ 25,000.00.
The trial court signed a judgment on September 18, 2017,[3] on the jury verdict, the damages award, attorney's fees, and costs, which decreed:
IT IS ORDERED, ADJUDGED AND DECREED that Judgment in accordance with the Jury Verdict be and is hereby rendered in favor of Plaintiff, Sally Dobyns, and against Defendant, the Board of Supervisors for the University of Louisiana System for unlawful retaliation.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be a judgment against Defendant and in favor of Plaintiff for compensatory damages in the amount of Twenty Five Thousand and No/100 Dollars ($ 25,000.00) together with legal interest from the date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the determination of the amount of attorney's fees and costs to which Plaintiff may be entitled is excluded from this Final Judgment, which is a final judgment in all other respects, and that this Court shall retain jurisdiction to determine the issue of attorney's fees and costs.
On September 21, 2017, the trial court signed another judgment on the jury verdict, the damages award, court costs, and the Board's motion to dismiss Dr. Dobyns's claim for attorney's fees, which decreed:
IT IS ORDERED, ADJUDGED AND DECREED that Final Judgment in accordance with the Jury Verdict be and is hereby rendered in favor of Plaintiff, Sally Dobyns, and against Defendant, the Board of Supervisors for the University of Louisiana System, in the amount of TWENTY-FIVE THOUSAND and NO/100 ($ 25,000.00) DOLLARS, together with interest at 6% per annum from the date service was requested following the judicial demand until the date of this Final Judgment, as *918 provided in R.S. 13:5112(C), and thereafter at the rate fixed by R.S. 9:3500.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Court Costs be and are hereby taxed against Defendant, the Board of Supervisors for the University of Louisiana System, and, in accordance with R.S. 13:5112(A) are hereby set at $ 11,958.57.
In further consideration of Defendant's post-trial Motion to Dismiss Plaintiff's Claim for Attorney's Fees, argued on June 12, 2017 by Crystal Bounds for the Plaintiff and Patrick McIntire for the Defendant, and in accordance with written reasons issued on July 18, 2017:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant's Motion to Dismiss Plaintiff's Claim for Attorney's Fees be and is hereby GRANTED, dismissing Plaintiff's claim for attorney's fees with prejudice, and with each party to bear their own respective costs on that Motion, set as $ 28.00 for Plaintiff and $ 55.00 for Defendant.
The Board filed a motion for new trial or judgment notwithstanding the verdict ("JNOV") of the September 18 and 21, 2017 judgments regarding the jury verdict.[4] Following a hearing, the trial court denied the Board's motion for new trial or JNOV and vacated its September 21, 2017 judgment. Thereafter, the Board filed a motion and order for a suspensive appeal of the September 18, 2017 judgment regarding the jury verdict.
RULE TO SHOW CAUSE; TIMELINESS OF APPEAL
Appellate courts have a duty to examine subject matter jurisdiction sua sponte, even when the parties do not raise the issue, and we are obligated to recognize any lack of jurisdiction if it exists. Quality Envtl. Processes, Inc. v. Energy Dev. Corp., 2016-0171 (La. App. 1 Cir. 4/12/17), 218 So.3d 1045, 1052-53. After the instant appeal was lodged, this court issued a rule to show cause ordering the parties to file briefs discussing why the instant appeal should not be dismissed because "[i]t appears that the Motion for [Suspensive] Appeal was filed untimely. " The show cause order was referred to this merits panel by an interim order dated November 13, 2018.
The trial court rendered judgment in favor of Dr. Dobyns and against the Board on September 18, 2017. Louisiana Code of Civil Procedure article 1974, governing the delay for applying for a new trial, provides:
The delay for applying for a new trial shall be seven days, exclusive of legal holidays. The delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913. [Emphasis added.]
Article 1913(A), governing notice of judgment, provides:
Except as otherwise provided by law, notice of the signing of a final judgment, including a partial final judgment under Article 1915, is required in all contested cases, and shall be mailed by the clerk of court to the counsel of record for each party, and to each party not represented by counsel.
According to La. C.C.P. art. 1913(A), notice of the signing of a final judgment is required in all contested cases and shall be mailed by the clerk of court to the counsel of record for each party. Carter v. C & M Freightliner, LLC, 2011-2184 (La. App. 1 Cir. 8/15/12), 97 So.3d 1191, 1194.
*919 Article 1913(D) requires the clerk to file a certificate in the record showing the date on which, and the counsel and parties to whom, notice of the signing of the judgment was mailed.
The record reveals that the bottom of the September 18, 2017 judgment contains a stamped certification, which reads: "I hereby certify that on this date a notice of the above judgment was mailed by me." The stamped certification includes a handwritten date of September 25, 2017, was signed by a deputy clerk of court for East Baton Rouge Parish (Wendy Richardson), and includes the handwritten names of eight people, but not any titles, designations, or mailing addresses for those listed.[5]
After this court's show cause order was issued, the Board supplemented the record with a notice of judgment dated September 26, 2017, that was issued by the same deputy clerk of court (Wendy Richardson) and which identified the name, firm, and address of counsel for the Board. The notice of judgment states: "YOU ARE HEREBY NOTIFIED OF THE FOLLOWING ACTION FOR THE AFOREMENTIONED CASE: THE COURT ENCLOSES A COPY OF THE JUDGMENT RENDERED ON THE TRIAL HELD FEBRUARY 6 - 10, 2017. (SEE DECREE)". The September 18, 2017 judgment on the jury verdict is attached to the notice of judgment.
Although dated September 26, 2017, the notice of judgment does not indicate that it was actually mailed on that date; however, the record reveals that counsel for Dr. Dobyns, as well as the trial court, acknowledged that notice of the September 18, 2017 judgment was mailed to the parties on September 26, 2017. When there is uncertainty as to the date of the notice of judgment, any doubt must be resolved in favor of the right to appeal. See Penalber v. Blount, 405 So.2d 1376, 1377 (La. App. 1 Cir. 1981). Accordingly, we find that notice of the September 18, 2017 judgment was mailed to the parties on September 26, 2017.
Therefore, the delay for applying for a new trial began on September 27, 2017-the day after the clerk of court mailed the judgment. See La. C.C.P. art. 1974. Seven days exclusive of legal holidays ran as of October 5, 2017. The Board has supplemented the record with documents showing that it fax-filed its motion for new trial or JNOV on October 5, 2017, which was received by the clerk of court's office that day, and that the Board thereafter complied with all of the statutory requirements governing fax-filings in civil actions. See La. R.S. 13:850. Thus, we find that the Board filed its motion for new trial or JNOV timely.
Following a hearing on the Board's motion for new trial or JNOV, the trial court denied the Board's motion, issuing reasons on February 8, 2018, and signing a judgment in accordance therewith on April 10, 2018. Louisiana Code of Civil Procedure article 2123, governing the delay for taking a suspensive appeal, provides, in pertinent part:
A. Except as otherwise provided by law, an appeal that suspends the effect or the execution of an appealable order or judgment may be taken, and the security therefor furnished, only within thirty days of any of the following:
*920 [...]
(2) The date of the mailing of notice of the court's refusal to grant a timely application for a new trial or judgment notwithstanding the verdict, as provided under Article 1914.
Article 1914(C) provides:
If the interlocutory judgment is one refusing to grant a new trial or a judgment notwithstanding the verdict, the clerk shall mail notice to each party regardless of whether the motion is taken under advisement. The delay for appealing the final judgment commences to run only from the date of the mailing of the notice, as provided in Articles 2087 and 2123.
The record does not contain a certificate showing the date on which, and the counsel and parties to whom, notice of the signing of the April 10, 2018 judgment denying the Board's motion for new trial or JNOV was mailed; however, we can assume that notice of judgment was mailed on April 10, 2018, or on some day thereafter. The Board filed its motion for a suspensive appeal on April 20, 2018, which is well within the thirty-day delay provided for in La. C.C.P. art. 2123(A), regardless of the actual date notice of the April 10, 2018 judgment was mailed. Based on the foregoing, we find that the Board timely filed its appeal, which we hereby maintain.
ASSIGNMENTS OF ERROR [6]
The Board assigns the following errors to the trial court's September 18, 2017 judgment:
1. The trial court erred ... by including jury interrogatory three on the Jury Verdict Form. It allowed for a plaintiff's liability verdict with only a finding that[:] (1) the Plaintiff's summer pay was reduced; (2) the Plaintiff was removed from her position; or (3) the Plaintiff was required to take leave when going to Connecticut, when none of those findings creates liability under the applicable legal principles.
2. The trial court erred by finding in favor of the plaintiff on her ADA retaliation claim. Under a de novo review, the plaintiff failed in her burden of proof. And even if every reasonable inference is given to the plaintiff, the evidence adduced at trial cannot reasonably be interpreted to trigger liability under the ADA or [the Louisiana] whistleblower law.
LAW AND DISCUSSION
Standard of Review
The jury interrogatories and a jury's factual findings are reviewed under the manifest error/clearly wrong standard of review. James v. Autozone, Inc., 2003-1255 (La. App. 1 Cir. 4/2/04), 879 So.2d 162, 165 ; Suprun v. Louisiana Farm Bureau Mut. Ins. Co., 2008-0241 (La. App. 1 Cir. 9/12/08), 2008 WL 4190661, at *3 (unpublished). A court of appeal must not set aside the trier of fact's findings unless (1) a reasonable factual basis does not exist in the record for the finding and (2) the record establishes that the finding is clearly wrong or manifestly erroneous. Stobart v. State of Louisiana, DOTD, 617 So.2d 880, 882 (La. 1993).
Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that *921 its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).
Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings. Id. Where a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Id. at 845.
As to jury interrogatories, unless the proposed jury interrogatories are so inadequate or incorrect as to preclude the jury from reaching a verdict based on the law and the facts (i.e. , constitute reversible error), the manifest error/clearly wrong standard applies. James, 879 So.2d at 165. But when a legal error, such as inadequate or improper jury instructions, interdicts the fact-finding process, the manifest error standard no longer applies. If the record is otherwise complete, the reviewing court should conduct a de novo review. Georgia-Pacific, LLC v. Dresser-Rand Co., 2015-2002 (La. App. 1 Cir. 10/31/16), 207 So.3d 1131, 1140, writ denied, 2016-02114 (La. 1/13/17), 215 So.3d 248.
Assignment of Error No. 1 : The Jury Verdict Form
In the Board's first assignment of error, it complains that the trial court's jury verdict form (or jury interrogatories) was defective-specifically, the third interrogatory-amounting to reversible error and warranting a de novo review of this matter.
The trial court is required to instruct jurors on the law applicable to the cause submitted to them. See La. C.C.P. arts. 1792 and 1793. As stated by this court:
The trial court is not required to give the precise instruction submitted by either party, but must give instructions that properly reflect the law applicable in light of the facts of the particular case. Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. The trial court must correctly charge the jury. If the trial court omits an applicable, essential legal principle, its instructions do not adequately set forth the issues to be decided by the jury and may constitute reversible error. Correlative to the trial court's duty to charge the jury as to the law applicable in a case is a responsibility to require that the jury receives only the correct law.
Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Trial courts are given broad discretion in formulating jury instructions, and a trial court judgment should not be reversed so long as the instructions correctly state the substance of the law. But when a jury is erroneously instructed and the error probably contributed to the verdict, an *922 appellate court must set aside the verdict. In the assessment of an alleged erroneous jury instruction, it is the duty of the reviewing court to assess such impropriety in light of the entire jury instruction to determine if the charges adequately provided the correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the instructions adequately guided the jury in its deliberation. Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice. The standard of review in determining whether an erroneous jury instruction has been given requires a comparison of the degree of error with the jury instructions as a whole and the circumstances of the case.
Likewise, the jury's verdict form may not be set aside unless the form is so inadequate that the jury is precluded from reaching a verdict based on correct law and facts. Jury forms or interrogatories that are misleading or confusing may be reversible error. Jury interrogatories must fairly and reasonably point out the issues to guide the jury in reaching an appropriate verdict. If the verdict form does not adequately set forth the issues to be decided by the jury (i.e., omits an applicable essential legal principle or is misleading and confusing), such interrogatories may constitute reversible error. [Citations omitted.]
Georgia-Pacific, LLC, 207 So.3d at 1137-38.
In this case, the trial court's instruction to the jury as to Dr. Dobyns's retaliation claims were as follows:
Plaintiff Dr. Dobyns claims that defendant retaliated against her because she took steps to enforce her lawful rights under federal law prohibiting discrimination and/or harassment based on disability in the workplace.
The law that prohibits discrimination and/or harassment in the workplace also prohibits an employer from retaliating against an employee because that employee has asserted rights or made complaints under that law.
Plaintiff Dr. Dobyns claims that defendant retaliated against her when she opposed the defendant's refusal to accommodate her disability, filed an EEOC charge, and/or opposed disability based discrimination and/or harassment by engaging in an adverse action pertaining to her employment when the defendant reduced her requested summer pay, relieved her as Director of the Center of Gifted Education, forced her to take leave, and/or forced her from her job. The [d]efendant denied these claims made by Dr. Dobyns[.]
In order for the plaintiff to prove her claim of retaliation under the ADA, the plaintiff must prove by a preponderance of the evidence that:
1. She participated in an activity protected under the law;
2. Her employer took an adverse employment action against her; and
3. There is a casual connection between the protected activity and the adverse action.
Plaintiff also claims that she was subjected to illegal reprisal under Louisiana law for her opposition to, reporting of, and protesting her alleged unlawful discrimination/harassment. Louisiana law provides that an employer may be held liable to its employee for reprisal if the employee proves, by a preponderance, the following elements:
A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of the law:
*923 (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
(2) Provides information to or testifies before any public body, including to the Equal Opportunity Commission (EEOC) or the Louisiana Commission on Human Rights (LCHR) conducting an investigation, hearing, or inquiry into any violation of law, or,
(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
Reprisal may include such things as firing an employee, loss of benefits, loss of pay, harassment, suspension, forced leave, effective demotion or any discriminatory action you find was taken as a result of the employee's disclosing, threatening to disclose, providing information to a public body, objection and/or opposing violations of law.
The Board does not challenge the jury instructions on appeal. After receiving those instructions, the jury was provided a verdict form with the following interrogatories to answer:
1. Do you find by a preponderance of the evidence that the defendant unreasonably denied plaintiff's request to work remotely to accommodate her condition?
_____ Yes _____ No
Please proceed to question # 2.
2. Do you find by a preponderance of the evidence that the defendant harassed the plaintiff because of her condition?
_____ Yes _____ No
Please proceed to question # 3.
3. Do you find by a preponderance of the evidence that the defendant reduced plaintiffs requested summer pay; and/or that she was removed as the Director of the Center For Gifted Education; and/or forced to take leave because of her condition; and/or harassed her because she sought to protect her legal right against discrimination based on her condition?
_____ Yes _____ No
If your answer is "YES" to either # 1, # 2, and/or # 3 above, please proceed to question # 4. If your answer is "NO", to # 1, # 2 and # 3 then you are done. Foreperson should sign and date this instrument and notify the bailiff that the jury has reached a verdict.
4. Do you find by a preponderance of the evidence that the plaintiff suffered damages as a result of the defendant's actions?
_____ Yes _____ No
If your answer is "YES", Please proceed to question # 5. If your answer is "NO," you are done. Foreperson should sign and date this instrument and notify the bailiff that the jury has reached a verdict.
5. Please state what sum of money in dollars and cents that would reasonably and fairly compensate the plaintiff for the damages she suffered from the actions of the defendant?
$ __________________
The record demonstrates that the Board timely objected to the jury verdict form. See La. C.C.P. art. 1793(C). The jury then returned its verdict, responding negatively to the first and second interrogatories, responding affirmatively to the third and fourth interrogatories, and writing $ 25,000.00 in the blank for the amount underneath the fifth interrogatory.
The Board contends that the third interrogatory failed to adequately set forth the elements of a retaliation claim under the ADA (and to the extent applicable, *924 under La. R.S. 23:967 ): proof of a protected activity, adverse employment action, and causation. Upon proof of those elements, the Board states that an employer must then provide a legitimate non-discriminatory reason for the adverse employment action, and upon providing such a reason, the burden shifts to the employee to prove but-for causation between the protected activity and the adverse employment action.
The Board argues that there are two defective inquiries in the third interrogatory: "Do you find by a preponderance of the evidence that the defendant reduced plaintiffs requested summer pay;" and "and/or do you find by a preponderance that she was removed as the Director of the Center For Gifted Education." The Board avers that those two inquiries required the jury to recognize two, undisputed facts: that the Board reduced Dr. Dobyns's summer pay in 2009 and 2010 from the amount she had requested; and, that Dr. Dobyns was removed as Director of the Center for Gifted Education. The Board contends that affirmative responses to those inquiries resulted in the jury automatically finding-based on the facts and evidence presented at trial-liability against the Board, regardless of the applicable law on retaliation under the ADA and La. R.S. 23:967.
In response, Dr. Dobyns argues that the third interrogatory specifically and unequivocally set forth the applicable legal standard for a retaliation claim under the ADA and La. R.S. 23:967, which she avers required her to prove that the Board's alleged retaliatory actions were taken because she sought to protect her legal rights against discrimination based on her disability. Dr. Dobyns further argues that the jury instruction given by the trial court as to her retaliation claims under the ADA and La. R.S. 23:967 clearly encapsulated the elements, as well as her burden of proof, of her retaliation claims, which she contends were echoed in the third interrogatory. Dr. Dobyns avers that the jury was given a copy of the jury instructions and the jury verdict form prior to retiring to deliberate their verdict.
Based on our review of the jury verdict form, we find that the third jury interrogatory was not defective and that it fairly and reasonably pointed out the retaliatory issue to guide the jury in reaching an appropriate verdict. From our review of the record, we do not find confusion of the jury or any inadequacy of the third jury interrogatory that would warrant ignoring the manifest error standard of review. Once the case was submitted to the jury, there were no exchanges between the jury and the court regarding the case. The jury instructions, given in conjunction with the jury verdict form, adequately provided the jury with the correct principles of law and adequately guided the jury in its deliberation. We cannot say that the third jury interrogatory misled the jury to the extent that it was prevented from dispensing justice. Therefore, we find no merit in this assignment of error.
Assignment of Error No. 2: Retaliation under the ADA and La. R.S. 23:967
In its second assignment of error, the Board argues that Dr. Dobyns failed to meet her burden of proof on a retaliation claim under the ADA and La. R.S. 23:967. Under 42 U.S.C. § 12203(a), "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." A plaintiff asserting a retaliation claim under the ADA need not prove that she has a disability. See 42 U.S.C. § 12203(a) ;
*925 Tabatchnik v. Continental Airlines, 262 F. App'x 674, 676 (5th Cir. 2008).
To establish a prima facie case of retaliation under the ADA, a plaintiff must show that: (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive. Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen., 730 F.3d 450, 454 (5th Cir. 2013).
Protected activity is any activity opposing employment actions or practices that are unlawful under the ADA, such as filing charges with the EEOC alleging discrimination on the basis of a perceived disability. The complaint must connect the complained-of employment practice to the employee's alleged disability. Gordon v. Acosta Sales & Mktg., Inc., 622 F. App'x 426, 431 (5th Cir. 2015). The relevant question is not whether a formal accusation of discrimination is made, but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner. Yount v. S & A Rest. Corp., 226 F.3d 641 (5th Cir. 2000) (unpublished per curiam ).
An adverse employment action is not limited to workplace-related or employment-related retaliatory acts and harm. The key question is whether the challenged action is materially adverse in that it is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination. The standard is objective, but the significance of any given act of retaliation will often depend upon the particular circumstances. Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs, 810 F.3d 940, 945 (5th Cir. 2015). Dr. Dobyns alleged that any of the following constituted adverse employment actions taken by the Board: removing her as the Director of the Center for Gifted Education, forcing her to take sick leave, retroactively reducing her summer pay for the summers of 2009 and 2010, and harassing her based on her repeated requests for accommodation.
A "causal link" is established when the evidence demonstrates that the employer's adverse action was based in part on knowledge of the employee's protected activity. Nall v. BNSF Railway Company, 917 F.3d 335, 349 (5th Cir. 2019). Formerly, temporal proximity between protected activity and alleged retaliation was sometimes enough to establish causation at the prima facie stage. However, the burden has now shifted to a heightened standard of "but-for" causation, for which temporal proximity, without more, will not suffice. Hernandez v. Metro. Transit Auth. of Harris Cty., 673 F. App'x 414, 419-20 (5th Cir. 2016).
The Louisiana whistleblower statute, La. R.S. 23:967, provides, in pertinent part:
A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
*926 (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
The Louisiana whistleblower statute targets serious employer conduct that violates the law. Melancon v. Town of Amite City, 2018-0442 (La. App. 1 Cir. 9/24/18), 261 So.3d 7, 10. A civil action is available as a remedy when an employer retaliates against an employee for making disclosures protected under the statute. La. R.S. 23:967(B) ; Melancon, 261 So.3d at 10. As a condition precedent to protection under the statute, the employee must first advise the employer of the violation of law before making the disclosure. La. R.S. 23:967(A) ; Melancon, 261 So.3d at 10. A violation of the statute occurs if: (1) the employer violated Louisiana law through a prohibited workplace practice; (2) the plaintiff advised the employer of the violation; (3) the plaintiff threatened to disclose or disclosed the prohibited practice; and (4) the plaintiff experienced a reprisal as a result of the threat to disclose or because of the disclosure of the prohibited practice. See Melancon, 261 So.3d at 10.
A "reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under La. R.S. 23:967(A). La. R.S. 23:967(C)(1). However, an employer is not prohibited from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such. Melancon, 261 So.3d at 10.
Dr. Dobyns showed that she participated in a protected activity by filing a charge of discrimination with the EEOC and the LCHR. Dr. Dobyns demonstrated the Board took an adverse employment action against her by removing her as the Director of the Center for Gifted Education. Dr. Dobyns also showed that a causal connection existed between the protected activity and the Board's adverse action by demonstrating that after she filed her charge of discrimination on August 12, 2011, she was removed as Director of the Center for Gifted Education three days later on August 15, 2011.
Thereafter, the burden shifted to the Board to state a legitimate, non-retaliatory reason for its decision. Dr. Gerald Carlson, Dean of the College of Education, testified that the Board's decision to remove Dr. Dobyns from her position as the Director of the Center for Gifted Education was based on the fact that the Board needed a Director who was consistently physically present on the UL campus to "be available to students when they came in, and the coordination of various programs that they had throughout the year, and primarily, the summer school."
The burden then shifted back to Dr. Dobyns to demonstrate that the Board's reason was actually a pretext for retaliation. In response to a question from counsel for Dr. Dobyns-"And it is true, is it not, that one of the reasons that you identified for removing Dr. Dobyns as director is because y'all were making accommodations and she was gone because she was being accommodated, right?"-Dr. Carlson testified, "I think in the conversation I had with Dr. Dobyns, I did mention that." In a prior deposition, which counsel for Dr. Dobyns used to impeach Dr. Carlson at trial, two reasons Dr. Carlson gave for the removal of Dr. Dobyns as the Director of the Center for Gifted Education were that he "felt it was a good time to move in a different direction other than just Lagniappe and summer programs" and that "when we were making accommodations for [Dr. Dobyns] to be gone, the center was without a director for several months. And I just felt it was important to have somebody there full time and be available to students, to faculty, to whoever's coordinating some of these other programs within *927 the center to be there." Based on the evidence presented at trial, there is a causal link between the Board's removal of Dr. Dobyns as Director of the Center for Gifted Education and her accommodations. The jury reasonably rejected the Board's proposed "legitimate, non-retaliatory" reason for its decision to remove Dr. Dobyns as Director of the Center for Gifted Education.
For the same reasons we find that Dr. Dobyns prevailed on her retaliation claim under the ADA, we find that Dr. Dobyns experienced a reprisal as a result of disclosing a prohibited practice in accordance with La. R.S. 23:967. Accordingly, we conclude that the record contains a reasonable factual basis for the jury's finding that Dr. Dobyns established a prima facie case of retaliation under the ADA and La. R.S. 23:967. We cannot say that the jury's verdict is manifestly erroneous.
DECREE
Based on the foregoing, the appeal is maintained. The motion of the defendant/appellant, the Board of Supervisors for the University of Louisiana System on behalf of The University of Louisiana at Lafayette, to correct citations in its original appellant brief is granted. The trial court's September 18, 2017 judgment on the jury verdict is affirmed. All costs of this appeal, in the amount of $ 15,027.00, are assessed to the defendant/appellant, the Board of Supervisors for the University of Louisiana System on behalf of The University of Louisiana at Lafayette.
APPEAL MAINTAINED; APPELLANT'S MOTION TO CORRECT CITATIONS IN ORIGINAL BRIEF GRANTED; JUDGMENT AFFIRMED.
Chutz, J. concurs.

Dr. Dobyns received a notice of right to sue from the EEOC on October 31, 2012.

Dr. Doybns filed an original petition and was later granted leave by the trial court to file a supplemental and amending petition, a corrected supplemental and amending petition, and a second supplemental and amending petition.

The trial court also signed a judgment on September 18, 2017, granting the Board's motion to dismiss Dr. Dobyns's claim for attorney's fees with prejudice and ordering each party to bear their own respective costs on the motion. That ruling is the subject of a related, pending appeal filed by Dr. Dobyns-2018 CA 0488.

Dr. Dobyns opposed the Board's motion for new trial or JNOV.

The eight people listed near the stamped certification are: Amanda Love (unknown), Patrick McIntire (counsel for the Board), Crystal Bounds (counsel for Dr. Dobyns), Jill Craft (counsel for Dr. Dobyns), Michael LaBorde (counsel for the Board), Michael Duran (counsel for the Board), Robin Magee (counsel for the Board), and Lawrence Marino (counsel for the Board).

The Board filed a motion to correct citations in its appellant brief; we grant that motion.